PATERSON & MACK *vs.* BANGS & ALCOTT.

Where one of the defendants in a suit at law, after the entry of a judgment
in such suit, filed a bill in chancery for relief, stating that he could then
prove his defence to such suit by one of his co-defendants therein; but it
appeared that such co-defendant was bound to indemnify the complainant
against the judgment, and there was no averment in the bill that the com-
plainant had released the witness or intended to release him from liability;
*Held,* that such bill could not be sustained as a bill for relief.

Where the defence to a suit at law is common to all the defendants in such
suit, they are all necessary parties to a bill for an injunction to stay the
proceedings at law.

As a general rule the complainant who is sued at law and has a legal de-
fence to such suit, and who only needs the aid of the court of chancery to
obtain a discovery to enable him to establish such defence, must come into
the court of chancery for his discovery before the trial at law.

Whether the court of chancery will, in any case, after judgment in a suit at
law, entertain a bill setting up a defence to such recovery which the com-
plainant might have availed himself of at law if he had filed a bill of dis-
covery in due time; *Quære?*

THIS was an appeal by the complainant Paterson, and August 2.
by E. D. Smith the assignee in bankruptcy of Mack the
other complainant, from an order of the vice chancellor of
the eighth circuit, denying an application for an injunction.

The facts in the case were substantially as follows:
In June, 1837, F. W. Paterson and E. Avery, who were
engaged in milling business at Rochester under the co-part-
nership name of Paterson & Avery, together with T. J. Pat-
erson and J. F. Mack, the complainants in this suit, as their
sureties, entered into an agreement with the defendants,
who were commission merchants at Boston, by which the
latter were to accept the drafts of Paterson & Avery, from
time to time, for the purpose of purchasing wheat to be
manufactured into flour and sent to the defendants to be
sold on commission to meet such drafts; and by which
agreement Paterson & Avery, and the complainants, as
their sureties, covenanted that Paterson & Avery should,
on the first days of January and July in each year, account
with the defendants for all acceptances before then made
by them of such drafts, and should, at such accountings,

leave in their hands flour sufficient to cover all such accep-tances, together with commissions, or should pay the defi-ciencies, if any, in money.    Paterson & Avery having fail-ed to meet their drafts in flour, or to pay the deficiency according to the agreement, the defendants, in February, 1838, commenced a suit against them and their sureties ; and in October, 1839, recovered judgment against them upon their agreement, for $7779,18, besides costs, upon a report of referees.    This judgment was stayed by an appli-cation to set aside the report until October, 1841, when the decision of the referees was confirmed by the court. Pending that suit the complainants filed a bill in this court ; and obtained an injunction to stay the proceedings at law, and to obtain such injunction they gave a bond, with O. E. Gibbs and W. E. Lathrop as their sureties, conditioned for the payment of all monies which might be recovered in such suit at law for debt and costs, and for the payment of the costs of the suit in this court, as required by the provisions of the revised statutes.    The injunction having been dissolved, and the judgment at law perfected, Bangs and Alcott applied to have the bond delivered up to them to be prosecuted.    The complainants thereupon filed their bill in this cause, stating, among other things, that the pro-ceeds of some of the drafts of Paterson & Avery had been remitted to the defendants in money, and applied by the latter in payment of drafts drawn and accepted previous to the agreement of 1837 ; which was substantially the same matter that had been attempted to be proved as a defence in the suit at law on the agreement.    The complainants also alleged, in their bill, that the answer of the defendants in the former suit, containing as it did a denial of the knowledge of material facts which could now be establish-ed by the testimony F. W. Paterson, one of the defendants in the suit at law, rendered it unsafe for them to use such answer as a defence in that suit ; but that, as they were now advised, he could be used as a witness in this court in their favor, and that he was well acquainted with all the facts constituting the defence which they attempted to set up and prove in the suit at law.    The complainants there-

1842.

Paterson
v.
Bangs.

upon expressly waived an answer on oath from the defendants, and prayed for an injunction to restrain such defendants from prosecuting a suit at law against them and their sureties, upon the bond, until the coming in of the answer and the further order of the court, and for general relief. Subsequent to the filing of this bill, Mack, one of the complainants therein, was duly declared a bankrupt, and Smith was appointed his assignee. The other complainant and Smith the assignee thereupon presented a petition to the vice chancellor, stating the filing of the bill and the contents of the same ; that subsequent to the filing of the bill an order had been made for the delivery of the bond to the defendants, to be prosecuted, and that a suit had been commenced thereon, against the complainants and their sureties in the supreme court ; and they prayed that an injunction might be issued according to the prayer of the bill. The vice chancellor, upon hearing of the parties, denied the application with costs. From which decision the petitioners appealed to the chancellor ; who, upon the opening of the argument, stated that it appeared that the official assignee of the complainant Mack was not a party to the suit, and had no interest whatever in restraining a suit against Mack or his sureties ; that he was not therefore a proper party to the petition, nor to the appeal ; and that Gibbs and Lathrop the sureties were necessary parties to a bill for an injunction to restrain a suit at law against them jointly with the complainants. The counsel for the respondents, for the purpose of disposing of the case upon the merits, thereupon consented to waive these objections of form for the purposes of this appeal merely.

The following opinion was delivered by the vice chancellor :

WHITTLESEY, V. C. This is another of those cases in which it becomes necessary to determine whether the circumstances attending it will authorize the court of chancery to review the adjudication of another tribunal. The general rule applicable to this class of cases is reported al-

most verbatim in a number of cases. Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law ; or of which he might have availed himself at law, but was prevented by fraud or accident, without any fraud or negligence in himself or his agent, will justify an application to a court of chancery. (*The Marine Ins. Co.* v. *Hodgson,* 7 *Cranch,* 236. *Duncan* v. *Lyon,* 3 *John. Ch. Rep.* 356.) From the numerous ca-ses which I have examined bearing upon the subject, I de-duce another rule, which is this : that if a party has the means of defence within his power, whether those means are available at law, or only available in this court by bill of discovery or relief, and the party knows of the existence of these means before the trial at law, and neglects to use them, and goes to trial at law upon other proofs and other questions, and fails, the court will not afterwards give him relief. I believe it is the spirit of all the cases, that a par-ty must avail himself of every means of defence within his knowledge and power at the time of going to trial, or he will be afterwards precluded from urging it. Judge Kent says, in *Le Grun* v. *Governeur & Kemble,* (1 *John. Cas.* 502,) "Every person is bound to take care of his own rights and to urge them in due season and proper order. This is a sound and salutary principle of law. According-ly, if a defendant having the means of defence in his pow-er neglects to use them, and suffers a recovery to be had against him by a competent tribunal, he is forever preclu-ded. (*See also Lansing* v. *Eddy,* 1 *John. Ch. Rep.* 49.) Lord Hardwick says, that a court of equity will not al-ways relieve against a verdict when the defendant submits to try at law first, when he might by a bill of discovery have come at the fact by the plaintiff's answer upon oath before any trial at law was had. (*Williams* v. *Lee,* 3 *Atk.* 223.) It is upon the ground that the party was ignorant of a ma-terial fact without any inattention or negligence on his part, so that he could not use it in any way until after the trial at law, that this court will in some cases give relief

after judgment when justice demands it. (*See Bateman* v. *Wilton*, 1 *Sch. & Lef.* 201 ; *Simpson* v. *Hand*, 1 *John. Ch. Rep.* 91 ; *Smith* v. *Lowery*, *Id.* 320 ; *Beecher* v. *Elkins*, 465 ; *Dodge* v. *Strong*, 2 *John. Ch. Rep.* 228 ; *Foster* v. *Wood*, 6 *Id.* 87.)

A court of chancery will not relieve against the negligence of a party ; and I have supposed that if a party knows enough of his case before the trial at law, to know that his defence is not available at law, but that he can only succeed in this court upon a bill for relief, and neglects to file such bill, and goes to trial at law and fails, that it is such negligence that he will not afterward be entitled to relief here.

The complainants' counsel supposes this case is similar in its construction to that of *Norton* v. *Woods*, (5 *Paige's Rep.* 249.) In that case the general principles governing the interference of chancery with judgments at law were discussed and passed upon, although the complainant finally failed from a deficiency of proof to sustain the allegations of his bill. (*S. C.*, 22 *Wendell's Rep.* 520.) In that case the complainant endeavored to introduce proof of his defence at law, but it was ruled out both at the circuit and by the supreme court. It was a case where the proof of the defence was to come from the admissions of the opposite party, though only a nominal party ; and the proof was ruled out because the party who made the admissions had parted with his interest before they were made. It was a case where a bill of discovery could not aid the defendant at law. It could only be aided by a bill for relief; and it does not appear from the case that the defendant at law knew that he could have aid only by bill of relief until after the trial at law. The only opinion delivered in the same case, in the court for the correction of errors, seems in that case to hold the judgment at law final, and not proper to be recovered by a court of chancery, though the decision of that court was upon the failure of the complainant to prove the allegations in his bill. (22 *Wend. Rep.* 50.)

In the case now before us the proof that the complain-ants wanted was the testimony of one of their co-defen-dants at law—proof which, of course, could not be reached by a bill of discovery. They did seem to suppose that a bill of discovery against the plaintiffs at law would furnish the necessary proof. They tried the experiment, and the proofs thus elicited were not such that the defendants were willing to use the answers on the trial at law. They knew then, before going to trial, that they must either file a bill in this court for relief, so as to secure the testimony of one of their co-defendants, or that they must go to trial upon such proofs as they had. All the facts which had a bear-ing upon their case had been within their knowledge. They chose to go to trial at law, trusting to succeed upon the proofs which they could extract from the accounts of the opposite party, of which they had copies in their pos-session; and also before the supreme court on a motion to set aside the report. The only question now is, can they come here after deliberately going to trial at law, with a full knowledge of the facts of their case? I will suppose that the agreement set up on the trial was only prospective in its operation, as I certainly so consider it. I will sup-pose that F. W. Paterson was the only witness by whom it could be proved that the previous indebtedness of Pater-son & Avery was paid out of the proceeds of drafts drawn after the date of the agreement—that if such a state of facts had been proved, the report would have been in favor of the complainants, and that F. W. Paterson could not be used as a witness, because he was a party to the record. Still all these facts were known to the complainants before the trial at law; and if the legal inference from the facts are such as the complainants' counsel draws, they could have succeeded in this court on a bill for relief filed before the trial at law. The only question then is, was there such negligence on their part in not filing such a bill before the trial at law, as to preclude them from resorting to this court now, in that shape? If the general rules which I have heretofore deduced from the cases are sound, this

1842.

Paterson
v.
Bo.....

was such negligence as to preclude them now from calling in question the judgment at law. They have chosen to abide by one species of defence and neglect another. They have chosen to go to trial to one tribunal, with full knowledge according to their own views of the case, that they had ample relief in another. They neglected to resort to a forum which would give them certain relief and run the chance in their means at law. There was no surprise at the facts, no accident to shut out their proof, no fraud to suppress them. There was only disappointment as to the result. It appears to me that to permit them again to be heard here under such circumstances, would be to permit parties to experiment, upon the chances of litigation in the different courts than the spirit of our laws would tolerate, and to protract litigation and postpone the final termination of legal controversies much longer than the policy of our laws deems allowable or proper.

In coming to the conclusion to which I have arrived, I lay out of the question the fact that it does not appear that these complainants will be injured by the judgment against them, as it does not appear that Paterson & Avery are insolvent. I lay out of view several other considerations of a rather technical nature, and prefer to place my decision upon the ground above suggested, as involving an important principle, not perhaps yet definitely decided. The motion to make the injunction absolute is denied, and the temporary injunction allowed is dissolved with costs against the complainants to be taxed.

*O. Hastings*, for the appellants.

*J. W. Gilbert*, for the respondents.

THE CHANCELLOR. Independent of the objection for the want of proper parties, which was waived on the argument, the vice chancellor was right in refusing to grant an injunction in this case. This is not a bill of discovery, as the answer on oath is waived. The question therefore

does not arise whether this court will in any case, after a judgment at law, entertain a bill to set up a defence in equity which the party, by the aid of a bill of discovery, might have availed himself of as a defence in the suit at law. The general rule unquestionably is, as stated by the vice chancellor, that the complainant must come here in the first instance, if he has a legal defence and merely wishes the aid of this court to enable him to establish such defence, either by a bill of discovery or otherwise. And in this case the complainants had no defence in this court, to the joint suit against them and Paterson and Avery upon the joint agreement, which they could not have availed themselves of in the suit at law with the aid of the discovery obtained by the answer of these defendants to a proper bill filed for that purpose. The defence, if any, in the suit at law was a defence to the principals as well as to the sureties in the agreement, as it went to the whole cause of action against any of the defendants in the suit upon the covenants contained therein. In cases of that kind all the defendants in the suit at law, which is sought to be enjoined, are necessary parties to the injunction bill in this court. (*Bailey* v. *Inglee*, 2 *Paige's Rep.* 278. *Morse* v. *Hovey & Thayer*, *ante*, p. 197.) In the case of *Miller* v. *McCan*, (7 *Paige's Rep.* 452,) the complainant sought to establish a defence arising subsequent to the giving of the note which he signed as a surety ; and which defence would not prevent the recovery of a judgment against his co-defendant in the suit at law.

Again ; the person who is alleged to be the only witness, to establish the defence to the suit upon the agreement is bound to indemnify the complainants against the recovery in the suit at law, and is therefore an incompetent witness in their favor. And there is no allegation in the bill that they have released him or intend to release him from his liability. In the case of *Beggs & Chester* v. *Butler & Adams*, (*ante*, p. 226,) this was considered as a material and necessary averment in a bill of this kind. Nor is the bill properly verified to entitle

the appellants to an injunction ; for the complainants only state the material facts in the bill upon information and belief. This would indeed be sufficient upon an order to show cause, if the facts were charged as being within the personal knowledge of the defendants, so that they might have denied the truth of the allegations upon oath if the same were not as alleged in the bill. But in a case of this kind, where the complainants ask for a preliminary injunction upon facts which are not alleged to be known to the defendants, the complainants should have obtained the affidavit of the person from whom their information was obtained, and who could swear to the truth of what he communicated to the complainants as facts. I am also inclined to the opinion that the mere fact that monies remitted to the defendants, and by them applied to the extinguishment of the prior indebtedness, were in truth the proceeds of some of the drafts accepted by them under this agreement, would not of itself be sufficient to make it their duty to apply such monies to the extinguishment of the debts arising under the agreement. And that to constitute a valid defence to the action at law, a knowledge of the fact that the monies remitted and applied in payment of the previous indebtedness were the proceeds of subsequent acceptances should have been brought home to the defendants, at the time ; so as to render them parties to the fraud which it is alleged Paterson and Avery committed upon the complainants, as their sureties, by thus applying the proceeds of the acceptances instead of remitting the same in flour to meet such acceptances according to the agreement. Without intending, however, to express any definitive opinion upon this point, I am satisfied that it would be an abuse of the process of injunction to delay these defendants thereby in the collection of their debt, against the sureties in the former injunction bond, without requiring the complainants to bring the money into court.

The order appealed from must therefore be affirmed with costs, to be paid by the appellants T. J. Paterson and E. D. Smith.