No. 37.—THOMAS POLLOCK, administrator, &c. plaintiff in error, *vs.* WM. P. GILBERT, executor of William Smith, *et al.* defendants in error.

[1.] The rule is stern and inflexible, that a party cannot ask for relief in Equity, on the ground that he has failed or omitted to make a legal defence at Law, even where the judgment at Law is manifestly wrong, unless he was prevented from doing so by fraud or accident, unmixed with any fraud or negligence in himself or his agents.

Pollock, administrator, &c. vs. Gilbert, executor, &c.

[2.] Where the complainant has been sued at Law, and has a legal defence, and only needs the aid of Equity to make it available, by getting discovery to establish his defence, he must go into Equity for discovery, before the trial at Law.

[3.] That matters which have received a judicial determination, cannot be called again into controversy, applies, with full force, not only in the same forum, but also as between Courts of Law and Equity.

[4.] When the jurisdiction of a Court of Law has once attached to a cause, its decision is final, as to all matters within its cognizance; and operates as a bar to their subsequent litigation, in the same or any other tribunal.

[5.] No degree of wrong or injustice, in the determination of a case at Law, will entitle the injured party to resort to Equity, unless there is some special ground for its interposition.

[6.] But when a cause involves matter exclusively within the jurisdiction of Equity, its final decision at Law, will not preclude a re-examination in Chancery.

[7.] The existence of an equitable defence, which could not have been made available as a legal defence, is a sufficient ground for obtaining an injunction to restrain a Common Law proceeding, before or after judgment.

[8.] Equity will interfere by injunction, either before or after judgment, whenever the cause is shown to involve matter purely of equitable cognizance, and essential to its proper determination.

[9.] The general principle, with regard to injunctions, after judgment at Law, is this : that any fact which proves it to be against conscience to execute such judgment, and of which the party could not have availed himself in a Court of Law, will authorize a Court of Equity to interfere, by injunction, to restrain the adverse party from availing himself of such judgment. A Court of Equity will interfere, at any stage of the suit at Law, upon a proper case being presented. An injunction is sometimes granted to stay trial; sometimes, after verdict, to stay judgment; sometimes, after judgment, to stay execution; sometimes, after execution, to stay the money in the hands of the Sheriff, if it be a case of a *fieri facias;* or, *to stay the delivery of possession, if it be a writ of possession.*

In Equity, in Houston Superior Court.   Demurrer.   Decision made by Judge HARDEMAN, May Term, 1854.

This bill was filed by Wm. P. Gilbert, executor of Wm. Smith, deceased, George Walker and George W. Jourdan, against Thomas Pollock, administrator of Risdon Smith, deceased.

The bill alleges, that in 1847, while sick and in contemplation of his death, Wm. Smith executed a deed of gift to his

son, Risdon Smith, for lots of land numbers 102, 103 and 121, in the 11th district of Houston County; that after the execution of this and other instruments of like character to other children, the said Smith declared his intention to be, not to deliver said instruments to the parties for whom they were intended, but directed them to be folded up and handed to his said son, Risdon Smith, to be kept by him until the said Wm. Smith should call for them; that the said lots of land constituted the homestead upon which the said Wm. Smith resided, and Risdon was the only child living with him. That in 1848, after he had partially recovered from his affliction, the said William Smith became dissatisfied with the disposition he had made of said lots of land, and entered into an agreement with the said Risdon to purchase back from him all his interest in and to the same, which agreement was as follows: the said William agreed to convey and did convey to the said Risdon, two negroes, Jim and Dick, worth $1,500, and a wagon and six mules, and other property, worth some $1,500, in consideration of which the said Risdon agreed to relinquish and release all claim to said lands to the said Wm. Smith, but never executed said deed of release and relinquishment.

That the deeds of gift were not recorded, and the parties thereto were informed and believed, that it would be sufficient to cancel or destroy them; and the title to the property conveyed by them, would return to and revest in William Smith, without a conveyance from the said Risdon; and that the deeds were handed back to the said Wm. Smith by the said Risdon, to be cancelled and destroyed; that Wm. Smith died in 185– and left Gilbert his executor. The bill further states, that after said agreement, the said Risdon always disclaimed title to the said lands; that the said William continued to reside on said lands, and to cultivate a portion of the same, until the year 1850, when he removed to the State of Louisiana; that on the 5th day of April, 1850, complainant, George Walker, bought said lands from the said William Smith, and received from him a deed of conveyance thereto; that Risdon Smith died intestate in the year 1849, and Thomas Pollock

administered on his estate, and commenced his action of ejectment, as such administrator, against complainants, George Walker and George W. Jourdan, (who had been put in possession of said lands,) for the recovery of the same, returnable to the April Term, 1851, of the Superior Court of Houston county ; that Wm. Smith, then in life, was notified to defend said suit, as by his covenant of warranty he was bound to do ; that said cause was tried on the appeal at the April Term, 1853, of said Court, and a verdict rendered in favor of Pollock, the plaintiff, as administrator of Risdon Smith, upon which judgment was entered up for the said premises, and the sum of Two Thousand Dollars for *mesne* profits, rents, &c.

The bill further charges, that said recovery was had by the said Pollock, as administrator, by setting up title under the said deed of gift, the contents of which were proved by parol ; that complainants, Walker and Jourdan, relied upon the cancellation of said deed of gift, under and by virtue of the agreement between the said William and Risdon Smith. The bill charges, that Risdon Smith, in his life-time, and since his death the said Pollock, holds the legal title to said lands, in trust for the said complainants.

The bill prays that the said Pollock, adm'r, &c. may be enjoined from enforcing the judgment in the said action of ejectment; be declared trustee, &c.; and be decreed to execute a deed of release and relinquishment to complainant, Walker, to all claim or title to said land, &c.

To this bill the defendant filed a general demurrer, which the Court over-ruled and ordered the defendant to answer. To which decision and ruling, Counsel for defendant excepted.

HALL, WARREN & SCARBOROUGH, for plaintiff in error.

GILES, BAILEY & POE, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The only question in this case is, will a Court of Chancery

interfere, to grant relief against the judgment at Law, under the facts set forth in the bill?

None of the cases cited, either from our own reports, or from the decisions of other Courts, are exactly in point. All of them relate to *legal* defences, which might have been made available in a Court of law; whereas, the ground of resistance to the recovery at Law here is, a pure equity which could not have been set up at Law. And for not arresting the action of ejectment, before judgment and filing a bill for the establishment of the defendant's title, to-wit: a deed from Risdon to William Smith, it is insisted that the complainant comes too late, now, to get an injunction against the ejectment, until a decree can be had.

[1.] We do not intend to disturb the rule, that a party cannot ask for relief in Equity, on the ground that he has failed or omitted to make a legal defence at law. This rule is stern and inflexible, even where the judgment at Law is manifestly wrong in law and in fact.

[2.] And such have been the uniform decisions of this Court. And we now go further, and say that where the complainant has been sued at Law and had a legal defence, and only needed the aid of Equity to make it available, by getting discovery to establish his defence, he must go into Equity for discovery, before the trial at Law.

[3.] And further, we hold that the rule, that matters which have received a Judicial determination, cannot be called again into controversy, applies with full force, not only in the same jurisdiction, but also as between Courts of Law and Equity.

[4.] When the jurisdiction of a Court of Law has once attached to a cause, its decision is final, as to all matters *within its cognizance;* and operates as a bar to their subsequent litigation, in the same or any other tribunal.

[5.] Hence, no degree of wrong or injustice in the determination of a case at Law will entitle the injured party to resort to Equity, unless there is some special ground for its interposition.

[6.] But when a cause involves matter exclusively within the-

jurisdiction of Equity, its final decision at Law will not preclude a re-examination in Chancery. Under such circumstances, the doctrine of *res adjudicata* does not apply. For as the matter on which the intervention of Equity is asked, could not have been determined at Law, it cannot be within the estoppel of the legal decision.

[7.] The existence of an equitable defence, which could not have been made available as a legal defence, is therefore a sufficient ground for obtaining an injunction, before *or after judgment*. (2 *White & Tudor's Leading Equity Cases*, 96.)

And after reciting the cases of *Foster vs. Wood*, (6 *Johns. Ch. R.* 89); and the *Marine Insurance Company of Alexandria vs. Hodgson* (7 *Cranch* 332); and *Truly vs. Wanger et al.* (5 *Howard*, 141), these annotators continue—

[8.] "It is well settled, in accordance with the rule laid down in these cases, that Equity will interfere by injunction, either before *or after judgment*, whenever the cause is shown to involve matter purely of equitable cognizance, and essential to its proper determination." (*Ibid*, 97.)

Upon a proper case being made, a Court of Equity will interfere to arrest the proceeding at Law, at any stage of it. Thus, an injunction is sometimes granted to stay trial; sometimes, after verdict, to stay judgment; sometimes, after judgment, to stay execution; sometimes, after execution, to stay the money in the hands of the Sheriff, if it be a case of a *fieri facias*; or to stay the delivery of possession, if it be a writ of possession. (3 *Wooddes' Lectures*, 56, *pp.* 406, 407, 412, 416. 1 *Mad. Ch. Pr.* 109, 110. *Eden on Injunctions*, ch. 11, *p.* 44.)

This is so complete an epitome of the whole doctrine upon this subject, as deducible from the opinions of Chancellor *Kent*, in the case in 6th *Johnson*, and of Chief Justice *Marshall*, in 7th *Cranch*, and of Mr. Justice *Grier*, in 5th *Howard*, as well as the general current of authorities, that we consider it useless to extend the discussion. See, further, 5 *Johns. Ch. R.* 122; 1 *S. & M. Ch. R.* 524; 13 *Ala.* 198, 798; 7 *Porter*, 549; 8 *S. & M.* 131; 4 *Iredell's Eq.* 97; 4 *Johns. Ch. R.*

138 ; 17 *Johns.* 384 ; 5 *Ga.* 22 ; 6 *Grattan,* 352 ; 3 *English,* 287 ; 4 *Iredell's Eq.* 183 ; 15 *Ala.* 501 ; 5 *Grattan,* 645 ; *Power vs. Reeder,* 9 *Dana,* 6.

The relief prayed for by this bill, is a decree for a deed to be executed by the administrator of Risdon Smith, to the vendee of William Smith. The defence is not only purely equitable, but one which could not, by possibility, have been made available as a legal defence. Was the defendent, then, in ejectment, bound to arrest the proceeding at Law, *before trial;* and failing to do so, does he come too late to obtain the intervention of a Court of Equity, *after judgment?* The cases say not ; and we know of no such rule as that sought to be established by the Counsel of Pollock.

The only case which he adduces in support of his position, is the *over-ruled* opinion of Vice Chancellor *Whittlesey,* in *Paterson vs. Bangs,* (9 *Paige,* 627.)

In the first place, I would remark, that the only question before the Vice Chancellor, there, was whether a complainant, who was sued at Law, and has a legal defence to such suit, and who only needs the aid of a Court of Chancery to obtain a discovery, to enable him to establish such defence, must come into the Court of Chancery for his discovery, before the trial at Law? And as a general rule, the Vice Chancellor held, and we think, as a question of diligence, very properly, that he was.

But waiving this criticism, it will be seen that the opinion of the Vice Chancellor is qualified by this important idea : the complainant *must know* that his defence is not available at Law, and that he can only succeed, in a Court of Equity, upon a bill for relief, and neglects to file such bill, in order that such negligence will be imputable, as will exclude the party from equitable relief.

In the case before us, it is evident that the complainant was ignorant that his defence could not be made available at Law. He believed, and did not doubt the fact, until he had the judgment of this Court to the contrary, that the cancellation or destruction of the unrecorded deed from William Smith, the fa-

ther, to Risdon Smith, the son, would revest the title in the grantee; or rather, that it would annihilate the only legal evidence, that it had ever passed out of him. And this rebuts the idea of want of diligence. He did not know that he could have aid, only by bill of relief, until after the trial at Law.

But it is insisted that the plaintiff in ejectment having prevailed at Law, that he should be allowed the benefit of his judgment; and that his writ of possession should not be stayed, which is *fructus finis et effectus legis;* especially, as the defendant can renew the suit, to recover the land and file his bill in aid of his Common Law action.

[9.] But, say the Supreme Court, in *Truly vs. Wanger et al.* adopting the same language before held by them in the *Marine Insurance Company vs. Hodgson,* (7 *Cranch.* 332 ;) and also in *Jarvis vs. Chandler,* (1 *Turn. & Russ.* 319,) "the general principle, with regard to injunctions, *after a judgment at Law,* is this: that any fact which proves it to be against conscience to execute such judgment, and of which the party could not have availed himself in a Court of Law, or of which he might have availed himself at Law, but was prevented by fraud or accident, unmixed with any fraud or negligence, in himself or his agents, will authorize a Court of Equity to interfere, by injunction, to restrain the adverse party from availing himself of such judgment".

Here, every fact charged in the bill, is admitted, by the demurrer, to be true. It is admitted that the original deed of gift to the defendant, from his father, was made in contemplation of death; that William Smith having partially recovered, entered into an agreement with his son to re-purchase the land, and paid him therefor a full consideration. That the first deed never having been recovered, the parties were advised that a recognizance was unnecessary; and that the destruction of the instrument would revest the title in the donor; and that accordingly, the deed of gift was destroyed; that bills of sale were executed and delivered, by William to Risdon Smith, for the property which was given in exchange for the land, which was taken possession of by Risdon Smith, who left the land in

the occupancy of his father, never pretending to set up any claim, thereafter, to the same; that William Smith continued to reside on a portion of the premises, until he removed to the State of Louisiana; and that some two years after, the last transaction between himself and his son, he sold the land to George Walker.

I ask, with such admissions as these, would it not be against conscience to allow this judgment at Law to be enforced? To oust the defendants of their possession, and to put them to the expense and inconvenience of re-commencing, *de novo,* the litigation at Law? And moreover, with such admissions, on the part of Pollock, the administrator of Risdon Smith, does it lie in his mouth to object, that due diligence has not been used, on the part of the defendants, in asserting their title?

He had better answer the bill. It is sur-charged—*overloaded*—with equity.