PLEASANT J. MULLINS, plaintiff in error, *vs.* WM. H. CHRIS-TOPHER, *prochien ami* of PAULINE CHRISTOPHER, defendant in error.

1. If a court of equity grant a new trial after a judgment rendered at law, it should be done only on a proper case being made. This is a power which should be exercised with great caution. No degree of wrong or injustice in the determination of a case at law will entitle the injured party to resort to equity, after judgment at law, unless there be some special ground for such interposition. If a party by proper diligence could have protected himself at law, but by negligence failed to do so, he cannot go into equity to be relieved from the consequences of such negligence.

2. The ordinance of the Convention of November, 1865, "to adjust the equities between parties," applies to contracts and not to judgments.

3. All judgments rendered prior to 8th November, 1865, were ratified and affirmed by the Convention, (Article V. Sec. 1, Par. 7) subject only to reversal by motion for new trial, appeal, bill of review, or other proceedings in conformity with the law of force when they were rendered.

4. After a verdict has been received and recorded, and the jury dispersed, it cannot be amended in matter of substance, either by what the jurors say they intended to find, or otherwise.

Bill to enjoin Judgment, &c. Decided by Judge WORRILL. Taylor County. Chambers, May, 1867.

Mullins averred that Wm. H. Christopher, as *prochien ami* of his daughter, Pauline, brought an action against him for breach of a promise to marry Pauline; that the case was tried on appeal at April term, 1865, of said Court, and the verdict was against Mullins for $5000 and costs; that *fi. fa.* had been issued for that sum and was in the hands of the Sheriff for collection.

It was averred also, that this verdict was found upon the

testimony of Wm. H. Christopher, plaintiff, solely, who testified that in 1862, when the action was brought, defendant was worth $75,000, counting the value of his slaves, which were from fifty to seventy-five in number.    Whereas, in fact, defendant in that year paid taxes on 3086 acres of land, valued at $15,000, twenty-eight slaves, valued $11,200, making a total of but $31,200; that this, too, was given in on the basis of Confederate currency, which was the only currency of this State then, and when said verdict was rendered ; that at the date of the verdict one dollar in specie was worth fifty dollars of such currency.

Because, as he averred, the jury expected said judgment would be paid in such currency, because defendant had lost heavily by the results of the war, and because Pauline's injury was only imaginary, (she having since married a man more suitable for her) Mullins thought that said judgment should be razeed to its specie value, and prayed injunction against its enforcement.

At Chambers the following facts appeared by *ex parte* affidavits.

Three of the jury affirmed that they intended their verdict should be paid in Confederate currency, and believed the balance of the jury so intended.    One of the complainant's solicitors affirmed that he had heard six of the jury say that they so intended.

Christopher affirmed that at the time of the breach of promise, Mullins was sixty years old, and Pauline but sixteen, that after her parents had reluctantly consented to the nuptials, and had prepared her wedding apparel, &c., Mullins, about the appointed time, and with no notice to them or Pauline, and without excuse, married another.

Christopher's solicitor affirmed that he was plaintiff's attorney in said action, (related the testimony in said cause substantially as aforesaid) that the case was defended by Col. S. T. Bailey and Edwards & Holsey, able lawyers, who urged the jury to find nominal damages only, because the same would have to be paid on a specie basis.

Two of the jurors who swore as to their intention, &c., af-

38

Mullins *vs.* Christopher.

firmed that, as they recollected, nothing was said by the jury as to the kind of currency in which their verdict was to be paid. Defendant read also an affidavit made by Mullins, showing that he, in January, 1866, was worth $15,000 at least.

The Chancellor refused the injunction, and this is assigned as error.

MILLER, EDWARDS & HOLSEY, for plaintiff in error.

W. S. WALLACE, B. HILL, for defendant in error.

WALKER, J.

1. This bill is filed with a double aspect; either for a new trial, or to reform the verdict. That a court of equity has the power to grant a new trial in a case tried at law upon a proper case made, has been settled since the celebrated contest between Lord Ellesmere and Lord Coke, in the early part of the seventeenth century. It is a power which should, however, be exercised with extreme caution, and on a proper case made. Pierce vs. Christain, 3 Ga. Rep., 229. In delivering the opinion in this case, Judge Lumpkin says : "The general rule is, that courts of chancery will not interfere after verdict and judgment at law, except in cases of fraud, or surprise, or in extraordinary cases where manifest injustice would be done, nor where the party might have defended himself fully at law, and neglected to do it. Great abuse would be made of a contrary doctrine, by drawing within the jurisdiction of equity, as by a side wind, almost all causes decided at law. The high powers entrusted to chancery to promote the purposes of justice, should not be abused to the vexation of the citizens and the unsettling solemn decisions of other courts, where it is to be always presumed that full justice has been done." See also Robbins vs. Mount, 3 Ga. Rep., 78 ; Scudder vs. Puckett, 12 Ga. Rep., 338 ; Stroup vs. Black, 2 Kelly Rep., 279 ; Kenan vs. Miller, ib., 329 ; Bostwick vs. Perkins, 1 Kelly's Rep., 139 ; Taylor vs. Sutton, 15 Ga. Rep., 106. But no degree of wrong or injustice in the determination of a case at law, will entitle a party to resort to equity, unless there is some special

ground for its interposition.   Pollock vs. Gilbert, 16 Ga. Rep., 402.   If a party have a good defence at law, and from negligence fail to set it up at the proper time, he must take the consequences of his own *laches;* he cannot go into equity to be relieved from the consequences of such negligence.   See the cases already cited.

We listened with much pleasure to the argument of our learned brother (who is so well known as the author of the "Bench and Bar of Georgia," and numerous other productions,) in favor of the aged plaintiff in error.   We are satisfied his follies have been cured ere this, and if the principles of equity would sanction it, we should take pleasure in relieving him from some of the consequences arising from his folly.   But after patiently considering the authorities and arguments of our learned brother, as applied to the facts of this case, we are satisfied there is no relief for his aged client. He has had his day in court, and there must be an end to litigation.   We see no ground on which equity can seize to set aside the verdict and grant a new trial.

2. It was insisted that the verdict was intended by the jury to be payable in the equivalent of "Confederate money," and not in present currency; and therefore, the verdict and judgment should be so reformed or amended as to express this intention; and that the equities between the parties should be adjusted under the ordinance of November, 1865. This ordinance applies in terms to "contracts not yet executed," and by no fair rule of interpretation can it be made to apply to a judgment.   See Whatley vs. Staton, decided during the present term.

3. Besides, the same Convention which passed the ordinance to adjust the equities between the parties to contracts not yet executed, also made a constitution by which it is provided, Art. V. Sec. 1, that "All judgments, decrees, orders, and other proceedings of the several courts of this State, heretofore made within the limits of their several jurisdictions, are hereby ratified and affirmed, subject only to past or future reversal by motion for a new trial, appeal, bill of review, or

Mullins *vs.* Christopher.

other proceeding, in conformity with the law of force when they were made." So that while the convention provided for adjusting the equities between parties to contracts not executed, it also, at the same time, ratified and affirmed all judgments made by the courts within their respective jurisdictions. This would seem to be pretty conclusive evidence that the ordinance was not intended to embrace judgments.

4. This Court has repeatedly decided that a juror, after the rendition of his verdict, cannot be heard to impeach it; and in accordance with these decisions, the Rev. Code, Sec. 3442, says: "A verdict may be amended in mere matter of form, after the jury have dispersed; but after it has been received and recorded, and the jury dispersed, it cannot be amended in matter of substance, either by what the jurors say they intended to find, or otherwise." This would seem to be conclusive. To allow a verdict to be amended by what some of the jurors, two years after the rendition of the verdict say they intended to find, would be directly in the teeth of the statute. Especially would this be wrong in this case, for two out of the three jurors sworn, state on oath, that so far as they recollect, there was nothing said at the time the verdict was rendered, among the jury in their consultation, as to what character of currency the verdict should be paid in. The language of the statute is clear and unambiguous. It is imperative and must be obeyed. It prohibits the amendment of this verdict by what the jurors say they intended to find. .We see no ground upon which the plaintiff in error can be relieved; and must, therefore, affirm the judgment of the Court below.

Judgment affirmed.