## LIBERTY LUMBER COMPANY *et al. v.* SILAS.

No. 10779. FEBRUARY 21, 1936.

*Paul E. Seabrook,* for plaintiff in error. *Ulmer & Dowell,* contra.

RUSSELL, Chief Justice. Sudie Silas filed her petition against the Liberty Lumber Company, I. E. Richard, and Black Cypress Lumber Company, praying that the charters of the two corporations be declared null and void because of nonuser and misuser; that the court declare that the property used by Richard in the operation of the Liberty Lumber Company, now claimed to be his individual property, and the property of the Black Cypress Lumber Company be subjected to petitioner's claim against the Liberty

Lumber Company; for cancellation of a stated agreement between Richard and the Liberty Lumber Company; that an order be issued restraining all three of the parties from encumbering any of the property formerly held by the Liberty Lumber Company and from altering or destroying any of the records or papers of the parties; that the court decree the award made by the Department of Industrial Relations against the Liberty Lumber Company to be the debt and obligation of Richard; that Richard and the Black Cypress Lumber Company be restrained from operating the sawmill business until they have complied with the provisions of section 67(b) of the Georgia workmen's compensation act by providing proper insurance upon their employees; for an order requiring the Liberty Lumber Company, Richard, and Black Cypress Lumber Company to pay petitioner the installments of the award made to her by the Department of Industrial Relations, stating specifically the items of that award; that all of the books, records, stock certificates, and other papers of the two named corporations be impounded by the court, that they may not be further falsified, changed, or destroyed; for permanent injunction, and for general relief. The defendant filed general and special demurrers to this petition, which were overruled, and the defendants excepted. As appears from the exhibits attached to the petition, an application to the Department of Industrial Relations was made by Sudie Silas, for compensation for the homicide of her husband. In 1932 an award to her by a commissioner was affirmed by the full board. On appeal to the superior court the same judgment was rendered, and was affirmed by the Court of Appeals. 49 *Ga. App.* 262. Execution was delivered to the sheriff, who made an entry of nulla bona as to the Liberty Lumber Company. The writ of error to the Court of Appeals was prosecuted on a pauper affidavit by Richard as president of said corporation.

The only question before us is whether the petition as amended stated a cause of action. It is well settled that pleadings are to be construed strictly against the pleader; but it is also a rule that a petition assailed by demurrer must be construed as a whole, and what may appear to be lacking in one paragraph may correctly and justly be supplied, if the omitted statements are found in some other part of the petition. The petitioner charges conspiracy between the defendants to relieve themselves, and especially Richard,

from any liability on the judgment in her favor. It would seem that if the allegations of the petition are true (and for the purposes of demurrer this must be assumed), the facts and circumstances were sufficient to authorize the inference of a conspiracy and an intent to defraud. Richard is the only stockholder in the Liberty Lumber Company; and after the judgment was obtained he applied for a charter, and is himself the only stockholder of the Black Cypress Lumber Company. So it would seem that if one man can conspire with another by speech or writing, it would be easier for there to be a conspiracy between Richard and the Liberty Lumber Company on the one hand and the Black Cypress Lumber Company on the other, because nothing but thought without expression would be necessary for all three to conspire (breathe together). In saying this we do not lose sight of the fact that this court has many times held that an artificial corporation is distinct from the individuals that compose it, even though one person may own all the stock in the corporation. It is alleged in the petition, that, two days before the date set for the hearing before the industrial commissioner, the Liberty Lumber Company made a contract in writing with Richard, which was recorded January 12, 1933. In this agreement (signed by Liberty Lumber Company by I. E. Richard as president, and by I. E. Richard as the party who was contracting with the Liberty Lumber Company) the company, "because of its recent transfer of all its property and equipment to Savannah River Company, causing it to shut down and discontinue business, has now no equipment of its own, nor any capital with which independently it could establish and operate another location. . . Now, therefore, in consideration of the premises, and of the sum of $10 each to the other this day paid, receipt of which is by each party hereby acknowledged, said parties agree with each other as follows, to wit: (1) Said Richard is to turn over to said company his said mill and equipment which is to be erected and placed in said timber [controlled by Richard] at such point as said company may wish, at the expense of said company, and all rail to be laid and relaid by said company at its own expense, and said mill and equipment shall be kept and maintained in good condition and repaired by said company also at its own expense. (2) The timber recently purchased by the said Richard from D. B. Warnell, or so much thereof as may be open for cutting from time to time, will

also be turned over to said company on a stumpage basis, to be cut and manufactured into lumber by said company at its own expense, but financed by said Richard; cutting to be done in accordance with the terms of the agreement of purchase between Richard and said Warnell; said company, after paying all advances made to it in money or merchandise, shall pay to the said Richard $5 per thousand feet for all lumber shipped, said amount being intended to cover both the stumpage charges and the rent for said mill and equipment. (3) All lumber cut by said company hereunder shall be and remain the property of said Richard until stumpage and all other charges thereon have been fully paid and all invoices for lumber shipped, and all books of account and records showing sales and daily operations by said company shall be open for inspection by said Richard at all reasonable hours. (4) If the operation of said company as herein contemplated shall, after a reasonable trial, prove unsuccessful or for any reason becomes unsatisfactory, either party may withdraw therefrom after three days notice; whereupon all of the rights and privileges of said company hereunder and all rights and privileges in and to said timber and the use of the mill and equipment of said Richard shall cease, and possession of all said properties shall automatically be and become fully restored to the said Richard, and all lumber and logs then on hand shall be handled by said Richard for account of whom it may concern, in accordance with this agreement."

It is alleged, that after execution of this agreement, when an effort was made to levy the execution on the property removed to Chatham County, Richard claimed the property as belonging to him, and claimed that he was then operating the business as the Black Cypress Lumber Company; that the agreement between Richard and the Liberty Lumber Company, in the attempt to establish ownership of all the property of that company in Richard, was made after the fatal injuries had been received by the petitioner's husband; that Richard had acquired sole ownership, and was at that time buying property in his own name and making contracts with himself and the Liberty Lumber Company, so there would be no property on which creditors or those having claims against that company could levy; and that the Black Cypress Lumber Company was created and control thereof secured by Richard for the purpose of hindering, delaying, and defrauding creditors of the Liberty

Lumber Company, in which he owned all the stock. Certainly it must be assumed that the relations between Richard and the corporations are as close as those of near relatives in cases where the relationship would establish a badge of fraud; and the plaintiff's case is based upon fraud. No authority need be cited to recall the rules that fraud may not be presumed, but must be proved; fraud being subtle in its nature, slight circumstances may be sufficient to carry conviction of its existence; in cases of close relationship, and when an attack is made that a conveyance has been with intent to hinder, delay, or defraud creditors, the transaction will be submitted to close scrutiny. It may truly be said that the two corporations codefendant with Richard are absolutely separate and independent artificial persons. However, it is our opinion that a case can be supposed in which three natural persons could enter into a conspiracy to hinder, delay, and defraud creditors of only two of the three persons; and if the third person, after having entered into the conspiracy, assisted in perpetrating this fraud, though the benefits were to go to the other two conspirators, he would not be relieved in a court of equity from damage if the other conspirators were insolvent. In this case it is alleged that under the award mentioned the plaintiff is a creditor whom Richard is seeking to defraud; that the actions of Richard individually (aside from the Liberty Lumber Company) have already rendered difficult the enforcement of petitioner's claim; and that all three of the defendants have participated in the fraud perpetrated and attempted against the creditors of the Liberty Lumber Company (if any) and the plaintiff in particular. It is our opinion that the question raised by the allegations of the petition, as to whether Richard is in fact all three of the defendants named in the suit, should have been submitted to the determination of a jury, as ruled by the judge.

In view of what we have said, the general demurrer that the petition "sets out no cause of action" was correctly overruled. In support of the proposition that the petition has no equity the cases of *Mullins* v. *Christopher,* 36 *Ga.* 584, and *Bishop* v. *Bussey,* 164 *Ga.* 642 (139 S. E. 212), are cited. In the *Christopher* case this court held that if a "court of equity grant a new trial after a judgment rendered at law, it should only be done on a proper case being made. This is a power which should be exercised with great

caution. No degree of wrong or injustice in the determination of a case at law will entitle the injured party to resort to equity, after judgment at law, unless there be some special ground for such interposition. If a party by proper diligence could have protected himself at law, but by negligence failed to do so, he can not go into equity to be relieved from the consequence of such negligence." Properly construed, this ruling does not debar a petitioner in equity from setting aside, *on a proper case,* a judgment at law, if there is "some special ground for such interposition." The petitioner in the case at bar alleged that she had used all the diligence possible under the circumstances. We are of the opinion that the *Mullins* case, supra, has no application to the facts of this case. The petitioner here is not asking a new trial, for all of the numerous trials which have been had have been in her favor. She is asking that the judgment resulting from the investigations by the Department of Industrial Relations, the superior court, and the Court of Appeals be enforced in a court of equity, and to that end that the obstacles interposed to prevent the fruitful result of all these judgments be removed. Furthermore, it must be borne in mind that the judgment of the superior court on the findings of the Department of Industrial Relations is not in a full sense similar to other judgments at law, in that the superior court hears no evidence and is restricted entirely to that delivered before the Department of Industrial Relations. The judgment in *Bishop* v. *Bussey,* supra, was not by a unanimous court. This case next appeared (*Bussey* v. *Bishop*) in 169 *Ga.* 251 (150 S. E. 78, 67 A. L. R. 287), and Justice Hill wrote a dissenting opinion which was concurred in by Presiding Justice Beck.

Ground 3 of general demurrer is that insolvency of the defendants is not alleged. A persual of the petition shows that sufficient facts are alleged in different paragraphs of the petition to require the plaintiff to prove insolvency as completely as if insolvency as to each one of the defendants had been categorically stated and repeated. Ground 4 is that the allegations are not sufficient to entitle plaintiff to the relief prayed for. It is our opinion that the allegations are sufficient to entitle her to the greater portion of the relief prayed for. We have frequently held that a petition can not be dismissed on general demurrer if the plaintiff is entitled to recover anything for which he prays; and while there may be some

relief for which the plaintiff prays to which she is not entitled, these allegations merely relate to the incidents by which the plaintiff seeks to obtain the enforcement of the judgment. The petition could not be dismissed as a whole.

The defendants filed special demurrers on four grounds. The first insists that the allegations of fraud are not sufficiently specific, are too vague and obscure, and are mere conclusions of the pleader. After careful consideration of these allegations in connection with other parts of the petition, we are of the opinion that the court did not err in overruling this ground. In ground 2 it is insisted that the allegations are not sufficient, in that the materiality as evidence of the books and documents referred to is not alleged, nor is the description of the books, records, etc., sufficiently given, the reference thereto being too extensive in range and vague in description; and that "the express reasons given for the desired production of said books and records, and the obvious implications therefrom, are so utterly unwarranted, scurrilous, and insulting as to have no place in the records of a court of equity." We are of the opinion that the materiality of the evidence is easily inferable, and the description of the books, records, etc., is sufficiently given, and is not too extensive in range or vague in description. The contention that the reasons given are so utterly unwarranted, scurrilous, and insulting as to have no place in the records of a court of equity is absolutely unsupported. It is charged that the conduct of the defendants was fraudulent, and strong circumstances are brought to support the charge of fraud; but no language is used that is either scurrilous or insulting. Ground 3 was cured by amendment, for a copy of the execution was added. Ground 4 asserts that there is a misjoinder of parties, in that the allegations do not show that the Black Cypress Lumber Company is a proper party. For the reasons heretofore stated, that company was a proper party, and perhaps a necessary party, in view of the allegations as to conspiracy. The court did not err in holding that there was no misjoinder of parties defendant.

*Judgment affirmed. All the Justices concur.*