Under rulings of law applicable to the pleadings and the evidence, it was not error to decide that the title to the property in question was in the defendant corporation to which it had been sold by the purchaser at a foreclosure sale under security deed of the defendant debtor; and to refuse to fix a lien thereon in favor of the plaintiff in the amount of a foreign judgment against that debtor. In the absence of demurrer, a decree should have been entered against the debtor in the amount of the foreign judgment.
 No. 13168. APRIL 9, 1940.
S. T. W. A. Dewees Company, a Tennessee corporation, brought its action in Dade superior court against Paul B. Carter, a resident of Tennessee, and Paul B. Carter Company Inc., a corporation organized and existing under the laws of Tennessee. The sole prayer of the petition was that the court fix and establish a lien in favor of the petitioner on a certain described tract of land, containing five acres, in Dade County, Georgia, for the purpose of satisfying a judgment to be rendered on a judgment in petitioner's favor, rendered by a chancery court of Tennessee, against Paul B. Carter, for $2,277.14; and that a sale of this land be decreed for the satisfaction of the judgment. The petition showed, that in September, 1927, Paul B. Carter executed to Caldwell Company a note for $16,642.78, and secured it by a deed to the five acres referred to; that the assets of Caldwell Company were administered by a receiver, whereby the title to the note, secured as aforesaid, was acquired by General Securities Company; that General Securities Company foreclosed its security deed, and on June 9, 1936, bought in the land for $500; that pending the sale under the foreclosure proceedings Paul B. Carter, who was then and has remained insolvent, "made a contract under the terms of which the General Securities Company agreed that upon the payment of $750 and the expenses of the sale, amounting approximately to $20, or a total of about $770, the property hereinbefore described . . would be conveyed to defendant, Paul B. Carter;" that said land, after being bought in at the sale under the foreclosure proceedings by General Securities Company, was conveyed by it on June 15, 1936, not to Paul B. Carter, but at the instance of Paul B. Carter *Page 69 
to Paul B. Carter Company Inc., the corporation of which Paul B. Carter was president, treasurer, and one of the three directors, "either as a result of expenditures by him, by Paul B. Carter Company Inc., for his account, or by Paul B. Carter 
Company Inc., for its own account, for the purpose of preventing his creditors reaching said land by legal process." It further appears from the petition that after the execution of the security deed by Paul B. Carter to Caldwell Company in September, 1927, the land in question was twice sold for taxes, once on February 4, 1932, and again on June 8, 1933; that Paul B. Carter in his own name redeemed the land from the purchaser under the first tax sale on February 13, 1933, and from the purchaser under the second tax sale on December 4, 1935; and that Paul B. Carter, while insolvent, thereafter conveyed the land to Paul B. Carter Company Inc., by deed executed on January 15, 1936.
The petition alleges: "That the effect of the transactions between the defendants was to diminish the estate of the defendant Carter, because then he had less than prior to the transaction, and the defendant Paul B. Carter Company Inc. knew he was insolvent, knew his estate was being diminished, and while it may have been undertaking to secure a good bargain, it was necessary for it to turn away from, to `shut its eyes to' the fact that what was being done lessened the estate of the defendant, Paul B. Carter, and placed an asset of his where it could not be reached by his creditors without a proceeding such as this, and the defendant, Paul B. Carter Company Inc., when the negotiations began, made a choice between knowing and not knowing the truth about the transaction, or, its president being the defendant debtor, it actually knew the defendant's estate was being diminished, and therefore petitioner alleges that the conveyance of the land to Paul B. Carter Company Inc. was secured by Paul B. Carter with the intention to delay the petitioner as one of his creditors; that it is void against the petitioner, because the grantee, Paul B. Carter Company Inc., had knowledge of such intention on the part of Paul B. Carter or reasonable ground to suspect the intention." This allegation is followed by the prayers of the petition, already indicated, which are in form as follows: "petitioner is entitled to have this honorable court fix a lien upon said land for the satisfaction of the judgment to be rendered for the amount of said judgment, *Page 70 
$2,277.14, and interest in this cause, and decree the sale of the land for the satisfaction of said judgment. Wherefore petitioner prays that process may issue, requiring said defendants to be and appear and answer this complaint." There was no prayer for other or general relief.
The defendants, without demurrer, filed their answer, denying that petitioners were entitled to the relief sought, and setting forth that the consideration of the two deeds from the purchaser at the two tax sales "was wholly paid by defendant, Paul B. Carter Company Inc., and that Paul B. Carter became and was a trustee obligated to convey said land to Paul B. Carter Company Inc., by reason of said fact, and by reason of the further fact that the said land had been sold for taxes assessed against Paul B. Carter, and the entire transaction amounted by agreement of the parties to a redemption of the said land for the use and benefit of Paul B. Carter Company Inc. Defendant Paul B. Carter, in redeeming said land and taking deed in his own name from said (purchaser) was acting as trustee for and on behalf of Paul B. Carter Company Inc., by agreement between him and said Paul B. Carter Company Inc." Defendants further set forth in their answer that the consideration paid to General Securities Company was furnished wholly by Paul B. Carter Company Inc.; that the contract "by the terms of which that company agreed to buy in and did buy in the said land at the foreclosure was with Paul B. Carter Company Inc., and not with Paul B. Carter individually. The entire consideration paid to General Securities Company was paid by Paul B. Carter Company Inc., pursuant to the said agreement between the said two corporations." On the trial it was undisputed that the petitioner had obtained in Tennessee a judgment against Paul B. Carter for $2,277.14. Evidence submitted by the petitioner was to the effect, that, pending the foreclosure proceedings by General Securities Company, Paul B. Carter negotiated by correspondence for the settlement of his $16,000 note with eight years interest, and the redemption of the property for said sum of $750 plus $20 costs of foreclosure; that an arrangement to this effect was agreed upon, to be consummated by the payment of the $770 in four quarterly payments; and that it was only when the final payments were made and transfer of the title was to be made that Paul B. Carter notified General Securities Company, on June 8, 1936, that *Page 71 
deed was to be made in the name of Paul B. Carter Company Inc. Also testimony to the effect that in 1938 Paul B. Carter 
Company Inc. negotiated a sale of the land in question for $10,000, of which $1,000 was to be paid in cash, the balance by notes representing deferred payments. The evidence for the defendants showed that all the checks for all payments to General Securities Company, which checks were put in evidence, were signed by Paul B. Carter Company Inc. It was further shown, without contradiction, that Paul B. Carter Company Inc. furnished all the money paid in the two tax-redemption transactions, and the amount paid to General Securities Company, with the understanding that title was to be made to it.
The court passed the following order: "This cause having come on for trial before his honor C. C. Pittman, Judge of the superior court, without the intervention of a jury, it having been agreed by the parties that all matters at issue be determined by the court without a verdict of a jury, and the court finding that the purchase-price of the land described in the pleadings was paid by Paul B. Carter Company Inc., and that title to said property was in the company and not in the individual, it is therefore ordered that the prayer of the petition be and the same is disallowed, that the suit be dismissed, and that the defendants have and recover of the plaintiff, S. T. W. A. DeWees Company, the sum of $ ______ costs of the cause." In addition to the general grounds, the motion for new trial is as follows: "1. The court was in error in denying the petitioner any relief on the petition filed. 2. The court was in error in not giving the petitioner a judgment as prayed for in the petition filed. 3. The judgment of the court was contrary to the law and the evidence. 4. There was no evidence to support the judgment of the court. 5. The law and the evidence warranted and justified a judgment for the petitioner." A new trial having been refused, the plaintiff excepted. In its brief it contends as follows: "Carter owed over a million dollars, and also a note which, with interest, was about $24,000. The note was secured by a security deed. He settled it by his agreement to pay $750 for a deed to the land and cancellation of the note. Carter was insolvent at the time. At no time has the defendant Paul B. Carter Company Inc. offered to accept an amount sufficient to save it harmless. This silence gives rise to a suggestion of *Page 72 
collusion, which is strengthened by the fact that the land has a value several times the $750 paid. Carter owed the General Securities Company about $24,000, and settled the debt for $750, or about 3 per cent. In addition he got the land. The consideration was plainly about nothing. When the intimate relationship between the two, his insolvency, and the other aspects of the case are taken into consideration, it seems emphatic to us that the petition should have been sustained." The basis of the plaintiff's contention seems to be, that, up to the time General Securities Company conveyed the land to Paul B. Carter Company Inc., the insolvent Paul B. Carter had the right to redeem the equitable title to the land in question, which constituted a valuable asset; and that consequently his direction to General Securities Company that title be made to Paul B. Carter Company Inc. amounted to a voluntary conveyance by an insolvent debtor to delay or defraud creditors, and consequently was void as to his creditors, irrespective of knowledge of such intent by the grantee; and further that since such a conveyance operated to hinder and delay creditors, of which the grantee in this case had knowledge, it was void, even though based upon a valuable consideration. The plaintiff further contends that under any view of the case it was error for the court not to enter a personal judgment against Paul B. Carter, based on the admitted Tennessee judgment.
1. While it is true that a conveyance by an insolvent debtor, even though based on a valuable consideration, if made for the purpose of hindering or delaying creditors, is void as against them where the purchaser has actual or constructive knowledge of such purpose; and that if a conveyance for such a purpose be voluntary, that is, without consideration, it is invalid as to creditors, even though the grantee be without knowledge of such intent on the part of the grantor (Dickson v.Citizens Bank Trust Co., 184 Ga. 398, 191 S.E. 379;Citizens Southern National Bank v. Kontz, 185 Ga. 131,194 S.E. 536; Code, §§ 28-201 (2), 28-201 (3)); and while it is true that in cases of close relationship, when a conveyance is attacked as having been made with intent to hinder, delay, or defraud creditors, the transaction will be *Page 73 
submitted to close scrutiny; and it has been held that this rule applies with equal force in determining the character and purpose of a transaction between an individual and a corporation controlled by him (Liberty Lumber Co. v. Silas, 181 Ga. 774,777, 778, 184 S.E. 286), — still, in order for any of the above principles to have application, so that a conveyance by an insolvent debtor can be attacked by his creditor, it must be made to appear that the insolvent debtor actually parted with some valuable asset which belonged to him, and which, if title had been retained, might have been subjected to his debts.
2. According to the foregoing principles, where, as in this case, it appears that an insolvent debtor executed a deed to secure an indebtedness, which indebtedness appears to have at all times greatly exceeded the value of the security given, and that the lien was foreclosed by the grantee, and at the sale the property was bought in by the grantee, the fact that such grantee purchaser may have subsequently conveyed the property to a corporation of which the debtor was president and treasurer would not render such subsequent sale void as against the creditors of the debtor, where no attack is made upon the validity of the foreclosure sale, and where it appears that the consideration of the purchase by the corporation was furnished wholly by the corporation, and not by the debtor.
3. Such a series of transactions can not be taken as an assignment by the insolvent debtor of what, prior to the foreclosure, had been his equitable right of redemption in the land. See Citizens Bank of Moultrie v. Taylor, 155 Ga. 416
(117 S.E. 247). The fact that pending the foreclosure proceeding the debtor, as the undisclosed agent of the corporation to which the property was subsequently conveyed by the grantee purchaser at the sale, may have negotiated with the grantee purchaser for such a subsequent transfer of the property, in the event the grantee should become its outright owner by purchase at such sale, would not operate to change the rule. See, as to the rights of a judgment creditor where a defendant in fi. fa. has only an equitable interest, Code, § 39-201.
4. Under the foregoing rulings, and under the evidence, the court, to whom the case was submitted without a jury, did not err in holding that the title to the property was in the corporation to which it had been sold by the purchaser at the foreclosure sale; and consequently the court did not err in refusing to fix a lien *Page 74 
thereon in favor of the petitioner in the amount of the admitted foreign judgment against the defendant individual debtor.
5. In the absence of demurrer, the petition will be construed as seeking a general judgment with interest against the individual debtor in the amount of the admitted judgment obtained against him by the petitioner in the chancery court of Tennessee, and the court should have entered a decree accordingly.
Judgment affirmed in part and reversed in part. All theJustices concur.