MAXWELL, APPELLEE, *v.* THE OHIO FUEL GAS CO., APPELLANT.

(Decided December 30, 1938.)

*Messrs. Graham & Graham* and *Mr. C. A. Maxwell,* for appellee.

*Messrs. Pugh & Van Dervoort* and *Mr. Robert E. Scott,* for appellant.

SHERICK, J.   Plaintiff as a resident elector and gas consumer of the city of Zanesville, on behalf of himself and ten thousand others similarly concerned, sought and obtained a mandatory injunction against the gas company, whereby it is directed to furnish natural gas in the city of Zanesville in accordance with the terms of a rate ordinance duly enacted on March 11, 1938, and advertised, but not accepted by the gas company. From this decree the defendant appeals on questions

of law, which may be epitomized into two interrogatories which this court must now answer. The appellant's first claimed error is plaintiff's failure to plead and prove the making of a request or demand upon the city solicitor to commence this action before instituting suit. This, of course, is to urge a lack of capacity in plaintiff to maintain his complaint. It is said that the controversy is between the gas company and the city, which is the real party in interest.

The second ground advanced for reversal of the decree goes to the merits of the case. It is asserted that the rates appearing in the 1938 ordinance never went into effect in as much as the gas company never filed a written acceptance thereof or consented to the furnishing of free gas for certain municipal purposes. In other words, the ordinance is maintained to be but a proposal or offer to enter into a contract which, by reason of non-acceptance, was not consummated, and hence the only rates chargeable are such as were demandable under the existing prior and accepted rate ordinance.

The issues created were submitted upon an agreed statement of facts, wherefrom it appears that for several years last past, the duration of which is not definitely stated, the gas company possessed and operated under a franchise granted it by the city. On February 27, 1933, council enacted a rate ordinance which was to endure for a period of five years. It specified certain rates for gas users and further provided that the city was to enjoy a number of free fires. The ordinance after due advertisement was accepted in writing by the gas company. Thereafter a schedule of rates was filed by someone, presumably the gas company, with the Public Utilities Commission of Ohio.

On March 11, 1938, council enacted a new, or, let us term it, the present rate ordinance. It differs in but

one essential particular from the 1933 ordinance. The rates therein established are reduced, thereby effecting a saving to consumers of from five to ten thousand dollars a month. In all other respects the two ordinances, for the purposes of this review, are parallel. The mayor having approved the 1938 ordinance, the same was duly published. This ordinance has never been accepted by the gas company; but the company has, however, continued to furnish gas to its consumers within the city and to bill them, until restrained by the trial court, under the rates recited in the 1933 ordinance. No invoices for gas have been presented to the city since the 27th day of February or the 11th day of March, 1938, which was also the custom during the five-year period designated by the 1933 ordinance. No schedule of rates embodying the charges prescribed by the 1938 legislation has been filed with the Public Utilities Commission.

Three negative facts appear. It is not shown that the gas company has expressed a desire or purpose to withdraw from its field of service and operation, but to the contrary, seems able, willing and solicitous of continuing its service. No complaint in writing has been filed by anyone with the Public Utilities Commission with respect to the rates attempted to be established by the 1938 ordinance. It is also of seeming importance that the city is not seeking a forfeiture of the franchise.

It is also clear from the pleadings and facts that fraud or corruption is not charged or present. Neither is there any vestige of stifled competition, for appellant has no competitor in the Zanesville field. With these related facts in mind it becomes apparent that appellant's second claim of error is in fact a charge that the trial court's order is contrary to the law applicable to the presented facts. Before proceeding, however, to the merits of the controversy, we shall dispose of the matter of plaintiff's capacity.

Appellant in support of its position confines itself solely to Sections 4311, 4312, 4313 and 4314, General Code, which were previously known as Sections 1777 and 1778, Revised Statues. Section 4311 provides in part: "The solicitor shall apply in the name of the corporation * * * for an order of injunction to restrain * * * the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinance governing it, or which was procured by fraud or corruption." Clearly this section can have no direct application to this case. The same may be said of Section 4313, General Code, which has to do with the remedy of mandamus in case an officer or board fails to perform an enjoined duty. Section 4312 makes this provision:

"When an obligation or contract made on behalf of the corporation granting a right or easement, or creating a public duty, is being evaded or violated, the solicitor shall likewise apply for the forfeiture or the specific performance thereof as the nature of the case requires."

That portion of Section 4314, General Code, pertinent to the question, reads as follows:

"In case the solicitor fails upon the written request of any taxpayer of the corporation to make any application provided for in the preceding three sections, such taxpayer may institute suit in his own name, on behalf of the corporation; * * * No such suit or proceeding shall be entertained by any court until the taxpayer shall have given security for the costs of the proceeding."

The query is narrowed with the comment that plaintiff has complied with the court's order and has given bond in the sum of one thousand dollars.

It is perceived that plaintiff does not bring this action as a taxpayer. Neither is it brought for and on behalf of the municipality. Both of these possible appearances have been studiously avoided by plaintiff.

It is equally certain that appellant is not seriously embarrassed by lack of the corporation as a party to this suit or by the fact that it is required by the 1938 ordinance to furnish the city with free gas as is evidenced by its continued gratuity. And further soliloquizing, it seems hardly probable that the municipality was unadvised of the pendency of this suit. Perhaps its unconcern and disinterestedness is engendered by the receipt of free gas. At least, it may be concluded that neither litigant deems the city to be an indispensable party to a settlement of the controversy. If this proceeding had been an appeal on law and fact, this court would have required the city to have been made a party, to the end that all possible matters respecting the present rate ordinance might be herein adjudicated. This being an appeal on questions of law, of course such an order cannot be made.

Prior to the enactment of such statutes as are hereinbefore noted, it was the settled practice of courts of equity to recognize suits of this character, as well as suits by taxpayers on behalf of political subdivisions, without the intervention of earlier requests upon them or their legal departments to bring such suits; and legal departments were not then directed to act upon such demands. It is therefore clear that these statutes are in derogation of the common law. They are, however, remedial in character and consequently subject to a liberal construction. Their purpose was to curtail the indiscriminate commencement of a multiplicity of perhaps vexatious suits by irresponsible parties and center responsibility in one for the benefit of all; that is where a subdivision has a legal department, they create conditions precedent to the right to bring such suits under the provisions of Sections 4311 to 4313, inclusive, General Code. In other words it is determined that the statutes are broad enough to include city solicitors bringing suits; but it does not follow that they are sufficiently exclusive so as to deny the

right of a resident elector and consumer to exercise a right to sue, which he previously possessed under the common law. From such a standpoint the statutes should be construed strictly in accordance with the well-recognized rule applied to legislative acts in derogation of the common law. In as much as these four sections must be construed together, we take the view that the word "taxpayer" as it appears in Section 4314 should not be enlarged so as to include a class of non-taxpayers which are not within its terms. Taxpayers and those who theoretically pay no local taxes are equally in need of heat and light. The latter may not be interested in the collection and expenditures of public moneys, but they are vitally interested and in need of the necessities of life. Plaintiff therefore predicates his action, as we see it, not upon a contractual theory, even if a contract exists for his benefit, for no privity of contract exists between him and the gas company (See *Blunk* v. *Dennison Water Supply Co.*, 71 Ohio St., 250, 73 N. E., 210), but rather upon the ground that the utility is violating a public duty which it owes to him and the consumers whom he represents; that is to furnish him gas at a reasonable rate.

The case of *State, ex rel. Leineweber,* v. *Gas Co.,* 14 N. P. (N. S.), 97, although one in mandamus, is in truth a suit for a mandatory injunction. Therein the consumer was granted relief in equity or by a writ of mandamus without having first called upon the solicitor to sue. The present suit to our notion presents a stronger and more pertinent reason for recognition of plaintiff's right to sue, in that in this case no contract exists; while in the *nisi prius* case a contract did exist. We are further of firm opinion that appellant's public duty to furnish gas is primarily one owing the public which it serves rather than the municipal corporation which is but the public's contracting agency. We therefore conclude the question of capacity in appellee's favor.

It will be first observed that franchises are divisible into two classes; the powers granted a utility by its charter from the state, and those which it thereafter acquires, as in this case, by municipal grant of rights of occupancy of municipal ways. Rate ordinances passed in pursuance of such municipal grants serve two purposes in respect thereto, that is to say, such ordinances but supplement such grants and act as successive renewals of franchise privileges.

By the plain terms of the 1933 ordinance and its subsequent written acceptance, a contract came into being which was binding upon the contracting parties and the inhabitants of the city, for whose benefit it was in part made, for a limited period of five years. Being a contract it could be extended only by mutual consent of both contracting parties. Clearly, this contract expired on the 27th of February, 1938; by tacit understanding, it appears as an inference from the agreed facts, that the contract was extended to March 11th, 1938. Council's action upon that day is, however, clearly indicative of a repudiation of a continuance of any such understanding, if such did exist.

Section 3982, General Code, previously known as Section 2478, Revised Statutes, reposes in municipal councils legislative power to regulate the price that utilities may charge for the commodity which they distribute. It is provided therein in part:

"Such companies shall in no event charge more for * * * natural * * * gas, furnished to such corporation or individuals, than the price specified by ordinance of council."

It hardly need be stated that appellant is amenable to the command of this statute.

The rigor of council's power under this section is tempered, however, in a given case by Section 614-44, General Code. It is therein provided that a utility may file a written complaint with the utilities commission if it finds itself aggrieved by council's act. This

may be done within sixty days after the passage of the rate ordinance, and thereupon the commission shall "proceed to fix the just and reasonable rates * * * for such services which may be charged for a period of two years from the date of the filing of such petition and thereafter until changed, altered or modified by the council of such municipality or further order of the commission upon like application." The first part of this section not only states that council may so act "at any time within one year before the expiration of any contract entered into under the provisions of" Section 3982, General Code, but it also prescribes "or at any other time authorized by law proceed to fix the price, rate, * * * that such public utility may charge * * * or collect therefor for an ensuing period, as provided in Sections * * * 3982, * * * General Code." It is apparent that whether council acts prior or subsequent to the expiration of an existing contract is of little moment. Its act, by virtue of the powers conferred by Section 3982, General Code, fixes the rate for the period designated unless complaint be lodged with the utilities commission within the time allotted. Appellant has made no such complaint.

Section 614-44, General Code, in its concluding paragraph, directs:

"The filing of a complaint by a public utility, as herein provided, shall be taken and held to be the consent of such public utility to continue to furnish its product or service, and devote its property engaged therein to such public use during the term so fixed by ordinance or by the provisions of this act. * * * "

If a utility might so act or fail or refuse to act, as has this appellant, it might continue indefinitely to charge and collect an advantageous and unjust prior rate, at least until it be dispossessed of its municipal franchise, all upon the theory of no contract. It would enjoy the fruits of its local privileges under the franchise, but deny the obligations imposed upon it by

council's rate-making power and the mandates contained within Section 614-44, General Code. We find within the agreed facts no intimation of its desire to surrender its franchise. It has not so signified its intention to the city. Neither are we advised of any application having been made to the commission for leave to withdraw its service from Zanesville. We find it silently continuing its service.

*East Ohio Gas Co.* v. *City of Akron,* 81 Ohio St., 33, 57, 90 N. E., 40, speaks the thought we would convey. Therein the court quotes from *Munn* v. *Illinois,* 94 U. S., 113, 126, 24 L. Ed., 77:

" 'Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. *He may withdraw his grant by discontinuing the use;* but, so long as he maintains the use, he must submit to the control.' "

What is further said in the *Akron case, supra,* at page 55 is more than persuasive, for a " * * * city may regulate the price of gas after the expiration of the * * * term expressed in the contract, if the gas company continues to exercise its franchise in the city; but it may do so, not by virtue of the contract, but by virtue of the statute which empowers the city council to fix the price for a period not exceeding ten years. Having done so * * * its power was not exhausted; but so long as the gas company continues to exercise its franchise within the city, the council may fix the price for any period not exceeding ten years, and so on until the gas company discontinues."

Appellant would have it that its failure to act nullifies the rate ordinance of 1938. Such is not the law.

The utility points to Section 614-18, General Code, with the comment that it must furnish gas in accordance with the rate (1933) filed with the commission, and no other. The answer is, that it is the utility's duty to file such schedules and not the duty of the city or the consumer. It cannot be advantaged by its own neglect.

It is the judgment of this court that the rates now legally collectible from the consumers in Zanesville are such as are found within the 1938 ordinance for a period of five years from the date thereof unless the ordinance be amended or repealed or a new contract agreed upon, or modified by the utilities commission if it possesses that power.

With respect to the furnishing of free fires to the city, in the absence of the city from this suit, this court can approve of no order in respect thereto. Plaintiff is not the city's agent. We know of no rule of law requiring the furnishing of free gas, consequently no order will be made.

The judgment as modified is affirmed.

*Judgment modified and affirmed as modified.*

MONTGOMERY, P. J., and LEMERT, J., concur.