A90A1051, A90A1052. ARTRAC CORPORATION et al. v. AUSTIN KELLEY ADVERTISING, INC. et al.; and vice versa.

(399 SE2d 529)

McMURRAY, Presiding Judge.

Austin Kelley Advertising, Inc. ("Austin Kelley") filed a multi-count complaint against Artrac Corporation ("Artrac II"), Duramed Corporation ("Duramed") and BEI Holdings, Inc. ("BEI"), seeking recovery for an advertising and publicity services debt allegedly owed by Duramed and Artrac II's predecessor corporation, Artrac Corporation ("Artrac I"), f/k/a Health Services Group, Ltd. In Count 2, Austin Kelley seeks quantum meruit recovery from BEI, Artrac II and Duramed. In Count 3, Austin Kelley asserts fraud and seeks to set-aside a transfer of assets from Duramed (Artrac I) to Artrac II which allegedly left Duramed (Artrac I) with insufficient resources to pay

the advertising debt. In Count 7, Austin Kelley seeks recovery from BEI and Artrac II, alleging malicious interference with contract.

Artrac II, Duramed and BEI denied the material allegations of the complaint. Artrac II then cross-claimed against Duramed and filed a third-party claim against Morris Bradley (Duramed's president and chief executive officer), alleging that Duramed (Artrac I) and Bradley agreed to indemnify it for any claims asserted by Artrac I creditors.

Artrac II filed motions for summary judgment on its indemnity claims against Duramed and against Morris Bradley, respectively. Duramed and Morris Bradley filed opposing motions for summary judgment on the indemnity claims. Artrac II and BEI then filed a joint motion for summary judgment against Austin Kelley, BEI asserting that it is an improper party. In response, the trial court entered an order with the following findings of fact:

"This is an action for payment for advertising services rendered by [Austin Kelley] to a corporation originally known as Health Services Group, which changed its name to Artrac Corporation (sometimes called Artrac I in this Order), later sold a substantial part of its assets, including its name, to BEI Management [Services, Inc.], and subsequently became Duramed Corporation. BEI Management became Artrac Corporation (sometimes called Artrac II) after the purchase of the assets and name; the present Artrac Corporation[, Artrac II,] (formerly BEI Management) is a wholly-owned subsidiary of BEI Holdings, Ltd. Third-Party Defendant Morris Bradley is the chief executive officer of Duramed, and formerly the President and Chief Executive Officer of Artrac I.

"The advertising services provided by [Austin Kelley] included the creation of a new name and logo [for Health Services, Inc.], as well as brochures, pamphlets, trade show displays, newspaper ads, and stationery. [T]hese services were rendered from March 1987 through July 1987[. The] purchase agreement between Artrac I and BEI Management was entered September 1987, and . . . the two companies agreed as to which debts Artrac II would assume in October 1987. The debt to Austin Kelley Advertising was not assumed by Artrac II (formerly BEI Management). Defendant Duramed (formerly Artrac) has admitted liability of $93,644.70 on its contract with [Austin Kelley], but is apparently insolvent."

The trial court granted Artrac II's and BEI's motion for summary judgment on Austin Kelley's quantum meruit claim, but denied the motion as to BEI's improper party defense and Austin Kelley's fraudulent transfer of assets claim. Morris Bradley's and Duramed's counter motions for summary judgment on Artrac II's indemnity claims were granted. Artrac II and BEI now appeal in Case No. A90A1051. Austin Kelley cross-appeals in Case No. A90A1052. *Held*:

*Case No. A90A1051*

1. BEI and Artrac II first contend the trial court erred in denying their motion for summary judgment, arguing that the undisputed evidence does not support Austin Kelley's fraudulent conveyance claim.

"The following acts by debtors shall be fraudulent in law against creditors and others and as to them shall be null and void: . . . Every conveyance of real or personal estate, by writing or otherwise . . . or contract of any description had or made with intention to delay or defraud creditors, where such intention is known to the taking party [and every] conveyance, not for a valuable consideration, made by a debtor who is insolvent at the time of the conveyance." OCGA § 18-2-22 (2) (3). "It is well established that whether a [conveyance] was made with the intent to delay or defraud creditors is a question of fact for the jury to decide from all of the circumstances of the case. *Powell v. Westmoreland*, 60 Ga. 572 (4) (1878). It is likewise well established that whether the debtor is solvent or insolvent is a question of fact for the jury. *Primrose v. Browning*, 56 Ga. 369 (3) (1876)." *Goodman v. Lewis*, 247 Ga. 605, 606 (1) (277 SE2d 908).

In the case sub judice, the evidence shows that BEI was a major investor and creditor of Artrac I; that Artrac I was in serious financial trouble in September of 1987 and could not pay its debts; that BEI was aware of Artrac I's financial problems; that Artrac I's debt to BEI was forgiven in exchange for the transfer of Artrac I's most valuable assets to BEI's wholly-owned subsidiary, BEI Management Services, Inc. (Artrac II) and that Artrac I was virtually worthless compared to its remaining debts after the transfer of assets to BEI Management Services, Inc. (Artrac II). This evidence raises genuine issues of material fact as to whether the transfer of Artrac I's assets was accomplished to delay or defraud creditors. This proof also raises genuine issues of material fact as to whether Artrac I was solvent or insolvent at the time of the transfer of assets. Consequently, the trial court did not err in denying summary judgment on Austin Kelley's fraud claim.

2. Next, BEI and Artrac II contend the trial court erred in denying their motion for summary judgment, arguing that the undisputed evidence does not support Austin Kelley's malicious interference with contract claim.

"The intentional and non-privileged interference by a third party with existing contractual rights and relations constitutes a tort for which an action shall lie. *Sheppard v. Post*, 142 Ga. App. 646 (1) (236 SE2d 680) (1977); *Piedmont Cotton Mills v. H. W. Ivey Const. Co.*, 109 Ga. App. 876 (1) (137 SE2d 528) (1964); Code Ann. § 105-1401 [now OCGA § 51-9-1]. Furthermore, the courts of this state have recognized that such interference with a contractual right or relationship need not result in a breach of the contract to be actionable. It is suffi-

cient if the invasion retards performance of the duties under the contract or makes the performance more difficult or expensive. *Piedmont Cotton Mills v. H. W. Ivey Const. Co.*, supra at 879-880; *Southern R. Co. v. Chambers*, 126 Ga. 404 (55 SE 37) (1906)." *McDaniel v. Green*, 156 Ga. App. 549 (1), 550 (275 SE2d 124).

In the case sub judice, the evidence showing that BEI was aware of Artrac I's debt to Austin Kelley at the time of the transfer of assets to BEI Management Services, Inc. (Artrac II) and that Artrac I possessed virtually no valuable assets after the transfer is sufficient to authorize a finding that BEI's and Artrac II's actions in causing the transfer of assets from Artrac I was a fraudulent attempt to preserve BEI's interest in Artrac I over the interests of other Artrac I contract creditors. Consequently, genuine issues of material fact remain as to malicious interference with contract. The trial court did not err in denying summary judgment on Count 7 of Austin Kelley's complaint.

3. BEI contends the trial court erred in denying its motion for summary judgment as to its being an improper party, arguing that "it was an improper party to the instant action because [Austin Kelley] failed to establish any evidence . . . that BEI was the alter ego of [Artrac II] who was the purchaser of assets at issue . . . nor has [Austin Kelley] shown any evidence that [Artrac II] was created by BEI as a sham, used to justify wrong or protect fraud."

" 'Where the courts have disregarded the corporate entity because the corporation is the mere alter ego or business conduit of a person [or, as in the case sub judice a subsidiary corporation], it has generally been on the idea that the corporate entity has been used as a subterfuge and to observe it would be to work an injustice. "To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exists; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud." (Cits.)' *Farmers Warehouse of Pelham v. Collins*, 220 Ga. 141, 150 (137 SE2d 619) (1964)." *Carver v. Battey Machinery Co.*, 161 Ga. App. 315 (1) (291 SE2d 63). Further, issues of whether a subsidiary company is the alter ego of a parent company and whether the subsidiary company was formed to promote injustice or protect fraud are generally questions for the trier of fact, not the court on summary adjudication. See *Liberty Lumber Co. v. Silas*, 181 Ga. 774, 778 (184 SE 286).

In the case sub judice, it is undisputed that Artrac II is a wholly-owned subsidiary of BEI and that the companies have overlapping officers and directors. Further, there is evidence that BEI was a stockholder of Artrac I; that BEI was a major creditor of Artrac I and that BEI Management Services, Inc., was created by BEI to manage Ar-

trac I at a time when Artrac I's financial affairs were in disarray. This evidence and evidence that BEI pressured other Artrac I shareholders to sell Artrac I's most valuable assets to BEI Management Services, Inc. (Artrac II) is sufficient to authorize a finding that BEI Management Services, Inc. (Artrac II) was created as a subterfuge to protect BEI's financial interests over the interests of other Artrac I creditors. Consequently, the trial court did not err in denying summary judgment on BEI's improper party defense. See Kaplan's Nadler, Ga. Corps. & Limited Partnerships (1990 ed.), §§ 3-30; 3-31 and 3-32, pp. 97-99.

4. Artrac II argues that the trial court erred in granting summary judgment to Duramed and Bradley on its indemnity claim and denying Artrac II's motion for summary judgment on the indemnity claims.

It is undisputed that Bradley and Artrac I (Duramed) entered into a "PURCHASE AGREEMENT" with BEI Management Services, Inc. (Artrac II) wherein Artrac I agreed to transfer certain assets to BEI Management Services, Inc., in exchange for the forgiveness of Artrac I debts to BEI and BEI's assumption of enumerated Artrac I liabilities. It is also undisputed that BEI Management Services, Inc., did not assume Artrac I's debt to Austin Kelley; that Artrac I and Bradley agreed to indemnify BEI Management Services, Inc., for any liability incurred by BEI Management Services, Inc. (Artrac II) as a result of Artrac I's (Duramed's) failure to pay debts not specifically assumed by BEI Management Services, Inc., and that BEI Management Services, Inc., agreed to *"promptly advise [Artrac I] and Bradley of the assertion of any claim which might give rise to liability against [Artrac I] and Bradley and they shall have the right to defend such claims with counsel of their choice at their own expense."* (Emphasis supplied.)

The trial court strictly construed the "prompt" notice provision of the purchase agreement and granted summary judgment to Duramed and Bradley on the indemnity claims based on Artrac II's failure to give "prompt" written notice of Austin Kelley's lawsuit against Artrac II. The trial court relied on undisputed evidence showing that Artrac II gave written notice to Duramed and Bradley of Austin Kelley's lawsuit 24 hours before Artrac II's answer was due.

Duramed was a party to the Austin Kelley lawsuit and was served by a deputy sheriff with notice of the Austin Kelley complaint five days before Artrac II was served with process. Further, Duramed and Bradley were obviously aware of Austin Kelley's claim against Artrac II because Artrac II was named as a defendant in the complaint served upon Duramed. This evidence and evidence that Duramed answered the complaint without exercising its right to defend Artrac II is sufficient to present "a jury question as to whether

there was a waiver of the written notice requirement. *Assurance Co. of America v. Bell*, 108 Ga. App. 766 (1) (134 SE2d 540)." *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 558 (2 b), 559 (177 SE2d 819). Consequently, the trial court erred in granting summary judgment to Bradley and Duramed on Artrac II's indemnity claims. However, the trial court did not err in denying Artrac II's motions for summary judgment on the indemnity claims because genuine issues of material fact remain as to the validity of the "PURCHASE AGREEMENT" and the indemnity clause contained therein. See Division 1 of this opinion.

### Case No. A90A1052

5. Austin Kelley contends the trial court erred in granting summary judgment to BEI and Artrac II on its quantum meruit claim.

"[I]n order to recover under a quantum meruit theory, [claimant must] show (1) his performance as agent of services valuable to the defendants; (2) either at the request of the defendants or knowingly accepted by the defendants; (3) the defendants' receipt of which without compensating [claimant] would be unjust; (4) [and claimant's] expectation of compensation at the time of the rendition of the services . . . . See OCGA § 9-2-7, generally; *Johnson v. Lipscomb-Weyman-Chapman Co.*, 46 Ga. App. 798 (169 SE 266) (1933)." *Allen v. T. A. Communications*, 181 Ga. App. 726, 727 (353 SE2d 569). In the case sub judice, the services performed by Austin Kelley were for Artrac I, not BEI or Artrac II. Consequently, Austin Kelley's quantum meruit claim cannot survive against BEI and Artrac II since Austin Kelley could not possibly have held an expectation of compensation from BEI or Artrac II. The trial court did not err in granting summary judgment for BEI and Artrac II on Austin Kelley's quantum meruit claim.

*Judgment affirmed in part and reversed in part in Case No. A90A1051. Judgment affirmed in Case No. A90A1052. Birdsong and Sognier, JJ., concur. Carley, C. J., disqualified.*

DECIDED NOVEMBER 15, 1990 —
REHEARING DENIED NOVEMBER 29, 1990 — 

*Cohen, Pollock & Merlin, Martin M. Pollock, Lynn E. Marsal*, for appellants.
*Sutherland, Asbill & Brennan, Patricia B. Cunningham, John H. Fleming*, for appellees.