A92A0547, A92A0548. JEFFERSON-PILOT COMMUNICATIONS COMPANY v. PHOENIX CITY BROADCASTING, LTD. OF ATLANTA et al.; and vice versa.
A92A0549. HOLLIS v. JEFFERSON-PILOT COMMUNICATIONS COMPANY.
(421 SE2d 295)

McMURRAY, Presiding Judge.

These appeals are taken from the verdict and judgment in a multi-faceted litigation arising from a contract for the purchase and sale of a radio station. In 1980, Michael R. Hollis learned that the Federal Communications Commission ("FCC") was accepting applications for a permit to build and operate a 50,000-watt radio station in the Atlanta area. Hollis formed a corporation, Phoenix City Broadcasting Company of Atlanta, Inc., which in turn formed a limited partnership, Phoenix City Broadcasting, Ltd. of Atlanta. The permit to build the radio station was granted to this partnership in 1985.

Soon after the grant of the construction permit, the partnership entered into negotiations for the sale of the radio station to Jefferson-

Pilot Communications Company ("Jefferson-Pilot"). On April 9, 1987, Jefferson-Pilot and the partnership entered into an "Asset Purchase Agreement" concerning the sale and purchase of the radio station. This agreement reflected the restrictive effect of regulations of the Federal Communications Commission which prohibited the owner of a broadcast property from deriving a profit on the sale of an unbuilt station. The Asset Purchase Agreement provided that the partnership would have the transmitter facility constructed according to plans and specifications approved by Jefferson Pilot, and contemplated a transfer of the broadcast license after the station was completed and the partnership received program test authority. Upon satisfaction of a number of conditions precedent, including FCC approval of an assignment of the partnership's authorization for the station, Jefferson-Pilot was to purchase the radio station. The purchase price Jefferson-Pilot agreed to pay included reimbursement of pre-approved costs of construction, $1,500,000 cash and $500,000 worth of advertising time to the partnership. Although not a part of the purchase price for the assets, the agreement provided that on the closing date Jefferson-Pilot and Hollis would enter into a non-compete and consulting agreement under which Hollis would be paid $1,000,000 in cash over four years.

The partnership obtained financing for the construction of the station through H. J. Russell and Company, which later brought in The First National Bank of Atlanta ("First Atlanta") as a participating lender. H. J. Russell and Company assigned its rights under the loan documents to First Atlanta. The partnership, Jefferson-Pilot, H. J. Russell and Company, and First Atlanta executed an "Acknowledgement, Consent and Estoppel" in which the partnership and Jefferson-Pilot agreed to notify First Atlanta of any collateral default under the Asset Purchase Agreement, and agreed that under such circumstances First Atlanta could exercise any of the rights of the partnership under the Asset Purchase Agreement.

The partnership and Hollis employed Paul L. Whitney to oversee certain aspects of construction of the radio station. On July 31, 1987, Jefferson-Pilot paid $15,818 to Whitney, who was close to leaving the project due to non-payment.

During the course of construction of the radio station a disagreement developed between Jefferson-Pilot and the partnership concerning which party was to be responsible for certain of the construction costs. Jefferson-Pilot offered a lower purchase price than that stated in the Asset Purchase Agreement as a settlement of the issue and on May 20, 1988, sent a letter to H. J. Russell and Company and First Atlanta describing the friction between the parties.

On April 7, 1988, the new radio station began broadcasting and on April 18, 1988, a joint application for transfer of ownership was

filed with the FCC. Nonetheless, the disagreement as to construction costs had not been resolved and the potential audience of the new station had declined, when on July 7, 1988, Jefferson-Pilot notified the partnership that it was terminating the Asset Purchase Agreement.

The partnership succeeded in subsequently selling the radio station to another buyer at a lower price. Meanwhile, this litigation began when Jefferson-Pilot filed a breach of contract action in the State Court of Fulton County seeking return of $150,000 in earnest money advances. Jefferson-Pilot named the partnership and Phoenix City Broadcasting Company of Atlanta, Inc. as defendants. The partnership filed a counterclaim for breach of contract and tortious interference with contractual relationships, and Hollis filed an action against Jefferson-Pilot for tortious interference and breach of contract. These actions were consolidated and transferred to the superior court for trial.

The breach of contract claims raised by the partnership and Hollis were predicated on the termination of the Asset Purchase Agreement, while the tortious interference claims were predicated on the payment to Whitney and on the May 20, 1988, letter from Jefferson-Pilot to H. J. Russell and Company and First Atlanta.

On the trial of the case, the jury returned a verdict in favor of Jefferson-Pilot on its breach of contract claim to recover the $150,000 earnest money from the partnership and Phoenix City Broadcasting Company of Atlanta, Inc., and on the partnership's counterclaim for breach of contract. On the tortious interference of contract claims against Jefferson-Pilot, the jury returned a verdict in favor of Hollis, awarding no damages, and in favor of the partnership, awarding damages in the amount of $1,150,000.

Three appeals are taken from the judgment entered on this verdict. In Case No. A92A0547, Jefferson-Pilot enumerates as error the denial of its motions for judgment notwithstanding the verdict and motion for directed verdict against the partnership on the issue of tortious interference with a contract. In Case No. A92A0548, the partnership and Phoenix City Broadcasting Company of Atlanta, Inc. appeal the denial of their motion for judgment notwithstanding the verdict and motion for directed verdict in regard to Jefferson-Pilot's breach of contract claim, and in regard to the partnership's breach of contract claim against Jefferson-Pilot, as well as the trial court's failure to appropriately consider the partnership's motion for the trial court to determine the award of damages, or, in the alternative to order a new trial as to damages only on its tortious interference claim against Jefferson-Pilot. Hollis appeals in Case No. A92A0549, enumerating as error the trial court's refusal to grant his motion for judgment notwithstanding the verdict on his breach of contract claim

against Jefferson-Pilot, refusal to give a requested charge to the jury, grant of Jefferson-Pilot's motion for judgment notwithstanding the verdict on his tortious interference claim, and denial of Hollis' motion for the trial court to determine damages or, in the alternative, for the order of a new trial. *Held*:

1. In Case No. A92A0547, Jefferson-Pilot relies upon the proposition that a claim for tortious interference with contractual relations is viable only when the interference is done by one who is a stranger to the contract. *Piedmont Cotton Mills v. H. W. Ivey Constr. Co.*, 109 Ga. App. 876, 879 (137 SE2d 528). See also *Jet Air v. Nat. Union Fire Ins. Co.*, 189 Ga. App. 399 (375 SE2d 873) and *Sheppard v. Post*, 142 Ga. App. 646, 647 (1) (236 SE2d 680). While Hollis and the partnership contend that Jefferson-Pilot was a stranger to the contracts between the partnership and its lenders, and to the contract between Whitney and the partnership, the record shows otherwise.

The documents show that Jefferson-Pilot was an essential party to the contract between the partnership and its lenders, H. J. Russell and Company and First Atlanta. The original financing agreement between the partnership and H. J. Russell and Company was executed the same day as the Asset Purchase Agreement. The Asset Purchase Agreement required Jefferson-Pilot to give H. J. Russell and Company notice of any breach of that agreement so that it might have the opportunity to cure the breach. Later, when H. J. Russell and Company's rights under the loan agreement were assigned to First Atlanta, Jefferson-Pilot, the partnership, H. J. Russell and Company, and First Atlanta entered into the Acknowledgment, Consent, and Estoppel wherein Jefferson-Pilot acknowledged the assignment of the Asset Purchase Agreement to H. J. Russell and Company and thence to First Atlanta, promised to give First Atlanta prompt written notice of the occurrence of any default under the Asset Purchase Agreement, and agreed that in the event of default under the Asset Purchase, First Atlanta would have the rights possessed by the partnership under the Asset Purchase Agreement. Jefferson-Pilot was required to restate and reaffirm all of its obligations under the Asset Purchase Agreement. While it is true that Jefferson-Pilot did not acquire any obligation in regard to repayment of the loans, there were other rights and duties flowing between each of the parties. We cannot agree that Jefferson-Pilot was a stranger to the partnership's contractual relationship with the lenders. Rather, the buyer, seller, and lenders were all parties to a comprehensive interwoven set of contracts which provided for the financing, construction, and transfer of ownership of the radio station. Therefore, Jefferson-Pilot could not have tortiously interfered with that contractual relationship between the partnership and its lenders. *Piedmont Cotton Mills v. H. W. Ivey Constr. Co.*, 109 Ga. App. 876, 879, supra; *Jet Air v. Nat. Union Fire Ins. Co.*, 189 Ga.

App. 399, 403 (4), supra; *Sheppard v. Post*, 142 Ga. App. 646, 647 (1), supra.

A similar analysis is applicable to the relationship between the partnership and Whitney, the engineer employed to supervise the construction of the radio station. Although Whitney was employed by the partnership, the final payment to Whitney from the partnership was conditioned on approval of the quality and quantity of his work by Jefferson-Pilot. Since Whitney's ultimate responsibility was to see that the radio station was constructed to the satisfaction of the ultimate user, Jefferson-Pilot, it is clearly intended that Jefferson-Pilot benefit from the contract of employment between the partnership and Whitney. As a third party beneficiary of the contract between the partnership and Whitney, Jefferson-Pilot cannot be liable for tortious interference with that contract. *Cohen v. Wm. Goldberg & Co.*, 202 Ga. App. 172, 177 (3), 178 (413 SE2d 759).

It follows that the trial court erred in denying Jefferson-Pilot's motions for directed verdict and judgment notwithstanding the verdict against the partnership on the issue of tortious interference with a contract between the partnership and its lenders, H. J. Russell and Company and First Atlanta, and on the issue of tortious interference with a contract between the partnership and Whitney. In this connection, we must also note that the dissent's reliance upon *Cohen v. Wm. Goldberg & Co.*, 202 Ga. App. 172, 177 (3), supra, is misplaced. While *Cohen* does hold that a person who has not signed a written contract is not a party to that contract, it clearly does not suggest that a nonparty is necessarily a stranger to the contract. Indeed, that case holds that Joe Cohen is a non-party but not a stranger to a certain contract, and as such could not be subject to a tortious interference claim.

We also note a second reason that the trial court should have granted Jefferson-Pilot's motions for directed verdict and judgment notwithstanding the verdict directed to the merits of the tortious interference claims. There is no evidence that the action of Jefferson-Pilot, in sending the letter of May 20, 1988, or in making the payment to Whitney, was the proximate cause of any harm to the partnership. See *Perry & Co. v. New South Ins. Brokers of Ga.*, 182 Ga. App. 84, 89 (354 SE2d 852). The undisputed evidence is that neither H. J. Russell and Company nor First Atlanta took any action as a result of the May 20, 1988, letter. Both of these lenders did foreclose subsequently, after Jefferson-Pilot terminated the Asset Purchase Agreement and the partnership failed to pay the loan when it became due, but there is no evidence associating these events with the letter. Similarly, there is no evidence of any harm to the partnership due to the payment to Whitney. Whitney testified that he was not being timely paid by the partnership, was close to leaving the job when he received the payment from Jefferson-Pilot, and that his decision to remain on

the job was affected by the payment from Jefferson-Pilot. There is no evidence that the payment by Jefferson-Pilot retarded performance of the employment contract or made it more difficult or expensive. While issues of proximate cause are generally for a jury, this issue may be decided as a matter of law in plain and undisputed cases. *Williams v. Norred*, 200 Ga. App. 528, 529 (408 SE2d 827).

The trial court erred in denying Jefferson-Pilot's motions for directed verdict and judgment notwithstanding the verdict on the partnership's claims of tortious interference with contracts. The judgment in Case No. A92A0547 must be reversed. This holding also resolves the issues raised by the third enumeration of error in Case No. A92A0548, and by enumerations of error three and four in Case No. A92A0549.

2. The remaining two enumerations of error in Case No. A92A0548 address the denial of the partnership's motions for directed verdict and judgment notwithstanding the verdict on the opposing breach of contract claims between Jefferson-Pilot and the partnership. The Asset Purchase Agreement provided that: "Either Buyer or Seller may terminate this agreement on or After May 1, 1988 without liability to either party . . . if the conditions precedent set forth in Article 8 have not been satisfied (or, as to Articles 8.6 and 8.8, are not able to be satisfied) by May 1, 1988." There was evidence that none of the nine condition precedents set out in Article 8 had been met by the partnership before May 1, 1988. While there may be conflicting evidence concerning the completion of the condition precedents and some evidence of mutual departure from the terms of the contract, conduct on the part of Jefferson-Pilot amounting to estoppel, or implicit waiver of the May 1, 1988 deadline, the resolution of the factual issues thus presented is for the jury. *Rowe v. Ben's Truck Stop*, 197 Ga. App. 514 (398 SE2d 760); *Wenzcel Tile Co. of Fla. v. Newman*, 194 Ga. App. 776 (1) (391 SE2d 652). This holding also resolves the issues raised in the first enumeration of error of Case No. A92A0549, and renders moot the issues raised in the second enumeration of error in that case.

*Judgment reversed in Case No. A92A0547, and affirmed in Case Nos. A92A0548 and A92A0549. Birdsong, P. J., Carley, P. J., Pope, Andrews and Johnson, JJ., concur. Beasley and Cooper, JJ., dissent. Sognier, C. J., not participating.*

COOPER, Judge, dissenting.

The law in Georgia is that "[t]ortious interference with contractual relations is applicable only when the interference is done by one who is a stranger to the contract. [Cits.]" *Jet Air v. Nat. Union Fire Ins. Co.*, 189 Ga. App. 399, 403 (4) (375 SE2d 873) (1988). The majority finds that Jefferson-Pilot was not a stranger to either the contrac-

tual relationship between Phoenix City and its lender, H. J. Russell and Company, or the contractual relationship between Phoenix City and its contractor, Whitney. Thus, the majority concludes that as a matter of law, Jefferson-Pilot could not be liable for tortious interference with contract. I dissent because I am of the opinion that Jefferson-Pilot was a stranger to both contractual relationships and could be liable for tortious interference with contract.

With respect to the loan agreement between Phoenix City and H. J. Russell and Company, the majority concludes that Jefferson-Pilot was an "essential party" to that contract. That conclusion is apparently based on the fact that the loan agreement was executed on the same day as the Asset Purchasing Agreement and because the subsequent document labelled "Acknowledgment, Consent and Estoppel," executed by Jefferson-Pilot, Phoenix City, H. J. Russell and Company and First Atlanta, required Phoenix City and Jefferson-Pilot to notify the lender of any default under the Asset Purchase Agreement. Thus, the majority reasons that even though Jefferson-Pilot did not sign the loan agreement and did not otherwise acquire any obligation to repay the loan, Jefferson-Pilot, Phoenix City and the lender "were all parties to a comprehensive interwoven set of contracts which provided for the financing, construction, and transfer of ownership of the radio station." I do not agree that by executing several separate and distinct agreements, Jefferson-Pilot somehow became a party to an agreement, unsigned by it, regardless of how related those agreements may have been. In *Cohen v. Wm. Goldberg & Co.*, 202 Ga. App. 172 (3) (413 SE2d 759) (1991), this court, in considering a tortious interference claim, rejected the argument that a person who did not sign a contract could somehow become a party to that contract. See *Cohen*, supra at 177. Also, in *Sunamerica Financial v. 260 Peachtree St.*, 202 Ga. App. 790 (415 SE2d 677) (1992), this court noted that a parent company could under some factual scenarios be a stranger to a contract entered into between one of its wholly owned subsidiaries and a third party. I am unable to concur in the majority's conclusion which focuses on the relationship between Jefferson-Pilot and Phoenix City and the relationship between the various contracts executed rather than the specific contract which is the subject matter of the tortious interference.

I also disagree with the majority's conclusion that Jefferson-Pilot cannot be liable for tortious interference with the contract between Phoenix City and Whitney because Jefferson-Pilot was a third party beneficiary of that contract. The record reflects that Whitney was hired pursuant to an oral agreement, which was subsequently confirmed by a letter agreement, to provide services to Phoenix City for the construction of a broadcasting station. All payments were to be made by Phoenix City, with the final payment being contingent upon

Jefferson-Pilot's approval of the project. "In order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. [Cits.]" *Backus v. Chilivis*, 236 Ga. 500, 502 (224 SE2d 370) (1976). Since the subject of the Asset Purchase Agreement was the purchase of a radio station yet to be constructed, it is evident that Jefferson-Pilot as well as Phoenix City would be benefited by having the radio station constructed. However, it does not appear that Phoenix City or Whitney intended for Jefferson-Pilot to be a direct beneficiary of their agreement such that Jefferson Pilot would have standing to enforce the contract between Phoenix City and Whitney. See *Cohen*, supra at 178.

Finally, the majority concludes that there is no evidence that the actions of Jefferson-Pilot were the proximate cause of any injury to Phoenix City. "[T]he courts of this state have recognized that [tortious] interference with a contractual right or relationship need not result in a breach of the contract to be actionable. It is sufficient if the invasion retards performance of the duties under the contract or makes the performance more difficult or expensive. [Cits.]" *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga. App. 772, 774 (2) (399 SE2d 529) (1990). I find that there was evidence in the record from which the jury could determine that the interference by Jefferson-Pilot had the desired effect of harming Phoenix City's position with its lender as well as with its employee, Whitney, and of adding to the events which led to the eventual termination of the Asset Purchase Agreement. Because I believe that the trial court acted correctly in submitting the issue of tortious interference with contract to the jury, I must respectfully dissent.

I am authorized to state that Judge Beasley joins in this dissent.

DECIDED JUNE 24, 1992 —
RECONSIDERATIONS DENIED JULY 20, 1992 —

*Carter & Ansley, Tommy T. Holland, Keith L. Lindsay, Davis, Gregory & Christy, Hardy Gregory, Jr.*, for Jefferson-Pilot.
*Robinson & Gilner, Will E. Robinson*, for Phoenix City.
*Chamberlain, Hrdlicka, White, Johnson & Williams, Richard N. Hubert*, for Hollis.