**CAROLINA INDUSTRIAL PRODUCTS, INC., Joseph Wilen, and J.W. Equities, L.L.C., Plaintiffs,**

v.

**LEARJET, INC. and Raytheon Aircraft Services, Inc., Defendants.**

**No. 00–2366–JWL.**

United States District Court, D. Kansas.

March 20, 2002.

Edward A. McConwell, Catherine Moore, McConwell Law Offices, Mission, KS, for Plaintiffs.

Mark D. Katz, John M. Lilla, Sherman, Taff & Bangert, P.C., Kansas City, MO, Ron A. Sprague, Gendry & Sprague, P.C., San Antonio, TX, for Defendants.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

On December 18, 2001, this court granted summary judgment to Learjet, Inc. ("Learjet") on Counts One through Seven and granted summary judgment to Raytheon Aircraft Services, Inc. ("Raytheon") on Counts Ten and Twelve and partial summary judgment to Raytheon on Counts Eleven and Thirteen. The court granted Raytheon's motion to exclude plaintiffs' only expert witness offered to prove that Raytheon caused plaintiffs' damages at a hearing on January 3, 2002, and, consequently, granted summary judgment to Raytheon on all remaining counts. Plaintiffs now ask the court to reconsider its December 18 order (Doc. 237) and ask the court to enter an order allowing an interlocutory appeal (Doc. 236). The court finds plaintiffs' arguments in its motion to

reconsider unpersuasive and denies the motion. The court also denies the motion for an order allowing an interlocutory appeal.

● Background

The uncontroverted facts of the case were set out in detail in the court's December 18, 2001 order. Because plaintiffs' papers only advance arguments regarding summary judgment being granted to Learjet, the court will only summarize facts relevant to the claims against Learjet.

Carolina Products, J.W. Equities, L.L.C. ("J.W.Equities") and Joseph Wilen filed this suit against defendants Learjet and Raytheon. Plaintiffs owned and operated an aircraft, N825D. In February of 2000, N825D was damaged in a landing accident. On March 13, 2000, Joseph Wilen authorized Raytheon to repair N825D. On May 1, 2000, Raytheon faxed to Mr. Wilen a proposal for the repair of N825D. The proposal included repair of the "outboard leading edge" and a stall test following repair to the leading edge. The proposal noted that completion of the stall test "will be dependent upon the cooperation of Bombardier/Learjet." The proposal was accepted. On June 23, 2000, Mr. Smith sent to Mr. Wilen a proposal, listing items that "are in addition to, or a revision of" the earlier proposal. The proposal noted that all repairs to the leading edge must be performed by Learjet and included a corresponding charge of $2,500 for "outside service." Mr. Wilen accepted the June 23, 2000 proposal.

The Learjet structural repair manual requires that repairs to the leading edge be performed by an authorized Learjet repair facility. Raytheon contacted Learjet about repairing the leading edge. Learjet responded by informing Raytheon that 25D 236 had been "attrited" in May of 1991 and sold for scrap and that Learjet would not "provide Engineering or Technical support for this aircraft." Raytheon

completed all of the repairs to N825D except for the leading edge and stall test by mid-August 2000.

The FAA initiated an investigation of the accident that included reviewing all of the maintenance records and logbook entries for N825D. At the conclusion of the investigation, the FAA stated that it "was unable to determine whether Lear 25D 263, in its present configuration, conformed to its original type design or any approved type design, and that it was in an airworthy condition." For this reason, on October 19, 2000, the FAA issued an order suspending the airworthiness certificate of N825D.

● Motion to reconsider

● Standard of Review

Whether to grant or deny a motion for reconsideration is committed to the court's discretion. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1386 (10th Cir.1997); *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997). In exercising that discretion, courts recognize three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Marx v. Schnuck Markets, Inc.*, 869 F.Supp. 895, 897 (D.Kan.1994); D. Kan. R. 7.3 (listing three bases for reconsideration of order). A party may not use a motion to reconsider as a vehicle for raising arguments that should have been raised in the first instance or for rehashing arguments that have previously been rejected by the court. *United States v. O'Neal*, 28 F.Supp.2d 1211, 1212 (D.Kan.1998).

● Count One

Plaintiffs alleged in Count One, as set out in the pretrial order, that Learjet's refusal to repair the leading edge caused Raytheon to breach its contract with plaintiffs. In its December 18 order, the court

granted summary judgment to Learjet because the evidence in the record indicated that there were other Learjet-authorized repair facilities that could have completed the repairs to the leading edge pursuant to the requirements of the Learjet structural repair manual. Learjet's refusal to accept the work, therefore, did not cause Raytheon to breach its contract with plaintiffs to repair N825D.[1] In their motion to reconsider, plaintiffs argue that under Georgia law, the law applicable to this claim, a tortious interference claim need not allege an actual breach of contract but may be based on acts that "retard performance of the duties under a contract or makes the performance more difficult or expensive." *Artrac Corp. v. Austin Kelley Advertising,*

197 Ga.App. 772, 399 S.E.2d 529, 532 (1990). Plaintiffs argue that Learjet's refusal to accept the repair work "hampered Raytheon in its efforts to perform its contract" with plaintiffs.

■ Plaintiffs did not raise this argument in their response to the summary judgment motion and it is inappropriate to raise a new argument in a motion to reconsider. *O'Neal,* 28 F.Supp.2d at 1212. In addition, plaintiffs' argument is unpersuasive. The record is devoid of evidence indicating that Learjet's refusal to repair the leading edge caused Raytheon difficulty or added expense in completing its duties under the contract.[2] The evidence indicates that Raytheon neither attempted to repair the leading edge or to contact

---

**1.** Plaintiffs filed a supplement to their motion to reconsider on January 8, 2002, attaching excerpts from the depositions of Wes Lumry and Mark Smith. Plaintiffs submitted the Lumry excerpt to show that Learjet "could and would block completion of the contract by an authorized repair facility." In the excerpt, Mr. Lumry says that Learjet facilities (referred to as "Bombardier facilities") were instructed not to repair N825D. The next two pages of the excerpt clarify that other Learjet-authorized repair facilities are free to repair N825D and were not limited by these instructions. Thus, the excerpt does not support plaintiffs' contention. The court also notes that this excerpt was not a part of the summary judgment record and that it is not appropriate to supplement the record on a motion to reconsider absent a showing that the evidence is newly discovered or previously unavailable. *Committee For The First Amendment v. Campbell,* 962 F.2d 1517, 1524 (10th Cir.1992) ("When supplementing a Rule 59(e) motion with additional evidence, the movant must show either that the evidence is newly discovered [and] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence."); *Sithon Maritime Co. v. Holiday Mansion,* 177 F.R.D. 504, 505 (D.Kan.1998) ("A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider."). Plaintiffs

also cite to the deposition of Mark Smith, of Raytheon, in support of their argument that only Learjet could make the repairs. Mr. Smith's deposition excerpt was part of the summary judgment record. Mr. Smith merely testified that Raytheon, not a Learjet-authorized repair facility, could not complete the repairs to the leading edge because it lacked authority and "approved data" to complete the work. Mr. Smith did not testify that only Learjet, as opposed to other Learjet-authorized repair facilities, had necessary data or authority. In fact, his testimony appears to be that any Learjet-authorized repair facilities could make the repairs. Thus, plaintiffs fail in what appears to be their third attempt to point to evidence showing that Learjet prevented Raytheon from completing repairs to N825D.

**2.** Plaintiffs cite two cases in support of their argument that Learjet "hampered" Raytheon's performance of its contractual duties, *Artrac Corp. v. Austin Kelley Advertising,* 197 Ga.App. 772, 399 S.E.2d 529 (1990), and *Piedmont Cotton Mills v. H.W. Ivey Construction Co.,* 109 Ga.App. 876, 137 S.E.2d 528 (1964). In *Artrac Corp.,* the plaintiff sued BEI Holdings Inc. ("BEI") alleging that BEI tortiously interfered with its contract with Artrac Corporation ("Artrac") when BEI purchased substantially all of the assets of Artrac knowing that Aratrac owed the plaintiff money for advertising services performed under a contract.

another authorized repair facility to make the repairs after Learjet declined the business. There is no evidence indicating that Raytheon did not contact a different repair facility because it would be difficult or more expensive. The court will not, as plaintiffs apparently seek the court to do, assume that using a different Learjet-authorized repair facility would be difficult or more expensive.[3] Plaintiffs' argument, therefore, is not supported by the record and is rejected on this basis.[4]

 The court also granted summary judgment to Learjet on Count One to the extent that plaintiffs' claim was based on the allegation that Learjet falsely represented to the FAA that N825D was not airworthy. The court held that there was no evidence indicating that statements made by Learjet caused Raytheon to not repair the leading edge or perform a stall test.[5] In their motion to reconsider, plaintiffs argue that statements made to the FAA by Learjet caused the FAA to suspend the airworthiness certificate for N825D and that N825D could not fly without the certificate. While this may be true, it does not support a claim for tortious interference with Raytheon's contract

---

While the court explained that a breach of contract is not necessary for a claim of tortious interference with contract, the defendant's conduct, in fact, caused a breach of contract because Artrac was left insolvent. In *Piedmont*, the Georgia Supreme Court held that the alleged act of defendant in destroying work completed by the plaintiff on a bridge, while not preventing the completion of the bridge pursuant to contract, made the completion of the bridge more expensive and difficult and, therefore, the plaintiff stated a claim for tortious interference with contract.

A reading of these cases and other Georgia court decisions leads the court to conclude that the act of declining business, requiring Raytheon to contact another repair facility, without evidence of increased cost or other difficulty, does not amount to "retard[ing] performance of the duties under a contract or mak[ing] the performance more difficult or expensive." Such a holding would preclude companies from rejecting business opportunities because forcing the solicitor to go elsewhere could amount to a tort. Raytheon should not be able to force Learjet to accept business simply because Raytheon accepted a contract to do repair work requiring outside assistance and decided that it wanted Learjet's assistance.

3. Defendants pointed to the lack of evidence of causation in their summary judgment motion and it was plaintiffs' responsibility to come forward with evidence showing causation or, as the plaintiffs now argue, interference making performance more expensive or difficult.

4. In its brief, plaintiffs assert that the parties entered into the contract under the assumption that Learjet would complete the repairs. Plaintiffs provide no citation to evidence in the record in support and the court can find no such evidence in the record. Even if such an assumption was made, the failure of the assumption, alone, does not amount to hampering Raytheon's duties under the contract. Plaintiffs cite a deposition of Michael Straughen and attach the deposition to the motion to reconsider. In Mr. Straughen's deposition, he answered "yes" to counsel asking if Raytheon would be unable to complete the repairs without help from Learjet. Mr. Straughen's deposition excerpt was not in the summary judgment record. A motion to reconsider is not an opportunity to supplement the record with evidence previously available to the plaintiffs. *Campbell*, 962 F.2d at 1524; *Sithon*, 177 F.R.D. at 505. After reading the deposition excerpt, the court believes that Mr. Straughen was simply testifying that Raytheon itself could not perform the work. The fact that plaintiffs ultimately contracted with another Learjet-authorized repair facility to complete the repair indicates that it was possible for Raytheon to have the work completed without Learjet's assistance. As the court explained in its December 18 order, the record did not contain evidence showing that only Learjet could complete the repairs.

5. Because the defendants pointed to the lack of evidence of causation and the plaintiffs failed to produce any evidence of causation, summary judgment was appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

to repair N825D. Raytheon did not contract to fly N825D, but to repair the airplane. As the court pointed out in its summary judgment motion, there was no evidence in the record indicating that the inability to fly N825D prevented Raytheon from performing its contract to repair the airplane. The evidence indicated that because Learjet refused to repair the leading edge, Raytheon completed all other repairs but did not attempt to repair the leading edge.[6]

● Count Two

Plaintiffs alleged, in Count Two, tortious interference with business expectancy between plaintiffs and Raytheon. The Court's December 18 order granted summary judgment to Learjet for the same reasons as Count One. In their motion to reconsider, plaintiffs simply suggest that if the court changes its decision regarding Count One that it should do the same regarding Count Two. The court does not.

● Count Three

Plaintiffs alleged in Count Three that defendants engaged in deceptive trade practices in violation of Georgia law. The court granted summary judgment to Learjet because it was persuaded that the Georgia statute does not apply to disparagement of property that is not "goods" sold by plaintiffs. In their motion to reconsider, plaintiffs argue that defendants made disparaging remarks about the products of a competitor, as provided for in the statute. The court rejected this argument in its December 18 order and a motion to reconsider is not an appropriate vehicle to reargue the same point. *O'Neal,* 28 F.Supp.2d at 1212. Plaintiffs attempt to reargue the point is also unpersuasive. As the court explained in its December 18 order, it is not persuaded that because plaintiffs may have intended to sell N825D in the future, that plaintiffs were "competitors" of Learjet under the Georgia statute or that N825D constituted "goods sold" by plaintiffs. Plaintiffs also challenge the court's conclusion that the remedy under the act is inapplicable because it is limited to cases where a plaintiff can demonstrate that it is likely to be injured by a deceptive trade practice in the future. Here, plaintiffs argue, Learjet may continue to refuse to service N825D. Refusing to service N825D was not alleged to be, and is not, a deceptive trade practice. Statements about the airworthiness of N825D, the act alleged to be a deceptive trade practice, is not a future threat because the FAA has resolved the issue of N825D's airworthiness.

---

**6.** The court does not believe that plaintiffs argued that the lack of an airworthiness certificate prevented Raytheon from performing a stall test. In addition, a review of the evidence indicates that this was not the case. A stall test could not be performed without repairing the leading edge and Raytheon did not attempt to repair the leading edge or find another Learjet-authorized repair facility to make the repairs. There was no evidence in the record indicating that Raytheon did not seek to repair the leading edge because it believed that it could not perform a stall test without an airworthiness certificate. Likewise, there was no evidence in the record indicating that a stall test could not be completed without an airworthiness certificate.

The court also notes that plaintiffs, in their reply, indicate that "Martin" testified that only Learjet employees are authorized to perform a stall test. The summary judgment record does not contain an excerpt from the deposition of Randy Martin. Mr. Martin's deposition excerpt was first provided to the court with plaintiffs' supplement to their motion to reconsider. The court will not consider evidence submitted to supplement the summary judgment record through a motion to reconsider absent a showing that the evidence is newly available. *Campbell,* 962 F.2d at 1524; *Sithon,* 177 F.R.D. at 505.

• Count Four

Plaintiffs alleged in Count Four that false statements made by Learjet about N825D constituted common law product disparagement. The court reviewed Georgia case law and concluded that Georgia has not recognized the tort of common law product disparagement. In its motion to reconsider, plaintiffs request an order allowing an interlocutory appeal on the issue. As explained below, the request is denied.

• Count Five

Plaintiffs alleged in Count Five that Learjet maintained a monopoly over the market for repair and maintenance of Model 25D airplanes and that Learjet abused that monopoly. The court granted summary judgment to Learjet because the record contained no evidence to support plaintiffs' claim of monopoly. Plaintiffs ask the court to reconsider its ruling based on the deposition of Danny Cain. The deposition of Danny Cain was not a part of the summary judgment record. A motion to reconsider is not an opportunity to supplement the record absent a showing that the evidence is newly available. *Campbell,* 962 F.2d at 1524; *Sithon,* 177 F.R.D. at 505. The plaintiffs' motion to reconsider is rejected on that basis. Additionally, plaintiffs do not point to evidence from Mr. Cain's deposition indicating that Learjet held a monopoly. Mr. Cain provided a list of all Learjet-authorized repair facilities and a sample agreement between Learjet and the facilities. Neither the list nor the agreement establish the existence of a monopoly. They do not indicate that Learjet controlled what work other Learjet-authorized repair facilities may accept and they do not indicate what market share was otherwise controlled by Learjet. Plaintiffs also argue in their reply that an excerpt from the deposition of Randy Martin, submitted to the court with plaintiffs' supplement to their motion to reconsider, shows that Learjet controlled all pilots authorized to perform a stall test. Plaintiffs should have submitted this evidence in their attempt to resist the summary judgment motion. The court will not consider this evidence because plaintiffs' counsel submitted this evidence to the court, for the first time, attached to a supplement to a motion to reconsider with no attempt to show that the evidence is newly discovered or previously unavailable to plaintiffs. *Campbell,* 962 F.2d at 1524; *Sithon,* 177 F.R.D. at 505. The motion to reconsider is denied.

• Interlocutory appeal

Plaintiffs request that the court issue an order allowing an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). The court declines to allow an interlocutory appeal because it does not believe that an immediate appeal from the order would materially advance the ultimate termination of the litigation. A brief trial on the two remaining counts, unrelated to the question for which the plaintiffs seek an interlocutory appeal, is scheduled for May and an appeal regarding all counts may be brought shortly thereafter. The ultimate resolution of the case would not be advanced by giving plaintiffs a two month head-start on an appeal of one of the claims brought in the suit. Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 16 *Federal Practice*

& *Procedure* § 3930 (" § 1292(b) is designed to permit interlocutory appeals only for the purpose of minimizing the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings.")

IT IS THEREFORE ORDERED that plaintiffs' motion to reconsider (Doc. 237) and plaintiffs' motion for an order allowing an interlocutory appeal (Doc. 236) are denied.